|  |  |
|---|---|
| 1 | Robert B. Carey (SBN 011186) |
| 2 | John DeStefano (SBN 025440) |
|   | Tory Beardsley (SBN 031926) |
| 3 | HAGENS BERMAN SOBOL SHAPIRO LLP |
|   | 11 West Jefferson Street, Suite 1000 |
| 4 | Phoenix, AZ 85003 |
|   | Telephone: (602) 840-5900 |
| 5 | Facsimile: (602) 840-3012 |
|   | Email: rob@hbsslaw.com |
| 6 |   johnd@hbsslaw.com |
|   |   toryb@hbsslaw.com |

Robert B. Carey (SBN 011186)
John DeStefano (SBN 025440)
Tory Beardsley (SBN 031926)
HAGENS BERMAN SOBOL SHAPIRO LLP
11 West Jefferson Street, Suite 1000
Phoenix, AZ 85003
Telephone: (602) 840-5900
Facsimile: (602) 840-3012
Email: rob@hbsslaw.com
         johnd@hbsslaw.com
         toryb@hbsslaw.com

Brett L. Slavicek (SBN 019306)
Justin Henry (SBN 027711)
THE SLAVICEK LAW FIRM
5500 N 24th Street
Phoenix, AZ 85016
Telephone: (602) 285-4435
Facsimile: (602) 287-9184
Email: brett@slaviceklaw.com
         justin@slaviceklaw.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| Charles Miller, | Case No. 2:22-cv-01545-JJT |
|---|---|
| Plaintiff, | **FIRST AMENDED COMPLAINT** |
| v. | (Assigned to Honorable John J. Tuchi) |
| Trumbull Insurance Company, Hartford Insurance Company of the Southeast, Twin City Fire Insurance Company, Hartford Underwriters Insurance Company, Hartford Insurance Company of the Midwest, Hartford Casualty Insurance Company, | |
| Defendants. | |

Plaintiff Charles Miller for his Complaint against Defendants Trumbull Insurance Company, Hartford Insurance Company of the Southeast, Twin City Fire Insurance Company, Hartford Underwriters Insurance Company, Hartford Insurance Company of the Midwest, Hartford Casualty Insurance Company (collectively referred to as "Hartford" or "Defendants") alleges as follows:

**I.    THE PARTIES**

1. Charles Miller is a married man and, at all relevant times, was an insured on an insurance policy with Defendant Trumbull providing, among other coverages, uninsured and underinsured motorist coverage covering multiple vehicles on the same policy.

2. Defendant Trumbull Insurance Company ("Trumbull") is a corporation incorporated under the laws of the State of Connecticut, and is duly licensed to administer insurance in the State of Arizona.

3. Defendant Hartford Insurance Company of the Southeast ("HICS") is a corporation incorporated under the laws of the State of Connecticut, and is duly licensed to administer insurance in the State of Arizona.

4. Defendant Twin City Fire Insurance Company ("Twin City") is a corporation incorporated under the laws of the State of Indiana, and is duly licensed to administer insurance in the State of Arizona.

5. Defendant Hartford Underwriters Insurance Company ("HUIC") is a corporation incorporated under the laws of the State of Connecticut, and is duly licensed to administer insurance in the State of Arizona.

6. Defendant Hartford Insurance Company of the Midwest ("HICM") is a corporation incorporated under the laws of the State of Indiana, and is duly licensed to administer insurance in the State of Arizona.

7. Defendant Hartford Casualty Insurance Company ("HCIC") is a corporation incorporated under the laws of the State of Indiana, and is duly licensed to administer insurance in the State of Arizona.

8. Defendants are all insurance companies who sell policies in Arizona, and whose personal lines auto policies during the relevant period contained the same or substantially similar limit of liability language with respect to uninsured and underinsured motorist bodily injury coverage.

## II.   NATURE OF THE ACTION

3. This matter concerns the unlawful denial of "Stacked Uninsured Motorist Coverage" and "Stacked Underinsured Motorist Coverage" to a class of insureds entitled to Uninsured Motorist and Underinsured Motorist coverage on policies issued by Defendant Trumbull in Arizona.

4. For purposes of this Complaint, "Stacked Uninsured Motorist Coverage" generally refers to the ability of insureds to obtain benefits under their Uninsured Motorist Coverage when there are multiple vehicles insured on one policy.

5. For purposes of this Complaint, "Stacked Underinsured Motorist Coverage" generally refers to the ability of insureds to obtain benefits under their Underinsured Motorist Coverage when there are multiple vehicles insured on one policy.

6. The denial of Stacked Uninsured Motorist Coverage and Stacked Underinsured Motorist Coverage is contrary to well-established Arizona law as well as the language of the Trumbull policy. As such, the denial of benefits is unreasonable, is not "fairly debatable," and instead places Defendant Trumbull's own interests ahead of the class of policyholders and insureds.

7. On December 13, 2019, Charles Miller was driving his 2000 BMW Z3 when he was involved in a collision with non-party Kevin Hartman in Scottdale, Arizona.

8. As a direct and proximate result of the collision, Charles suffered severe and permanent physical, emotional and economic injuries.

9. As a direct and proximate result of the collision, Charles incurred reasonable and necessary medical expenses in excess of $170,000.

10. Non-party Kevin Hartman was solely at fault for causing the December 13, 2019 collision.

11. Non-party Kevin Hartman did not have any valid bodily injury liability, personal injury umbrella liability, or any other insurance coverage which may pay for the damages suffered by Charles Miller.

12. At the time of the collision, Charles Miller held a policy with Essentia Insurance Company ("Essentia") insuring the 2000 BMW Z3. The Essentia policy provided Uninsured Motorist Coverage in the amount of $50,000 per person, subject to an aggregate limit of $100,000 per collision.

13. Essentia paid its available policy limits of $50,000 to Charles Miller for his uninsured motorist claim.

14. At the time of the collision, Charles Miller held a policy with Defendant Trumbull covering (1) his 1997 Jeep Wrangler; (2) his 2005 Dodge Ram; (3) his 2013 Kia Forte; (4) his 2013 Honda Civic under Policy No. 55PAB942869, effective September 30, 2019 through September 30, 2020. Coverage during this period consisted of, among other things, Uninsured Motorist Coverage in the amount of $50,000 per person, subject to an aggregate limit of $100,000 per collision. A true and correct copy of the Trumbull policy is attached hereto as **Exhibit A**.

15. Defendant Trumbull charged $68 for the Uninsured Motorist Coverage on the 1997 Jeep Wrangler.

16. Defendant Trumbull charged $83 for the Uninsured Motorist Coverage on the 2005 Dodge Ram.

17. Defendant Trumbull charged $67 for the Uninsured Motorist Coverage on the 2013 Kia Forte.

18. Defendant Trumbull charged $129 for the Uninsured Motorist Coverage on the 2013 Honda Civic.

19. Charles Miller is an "insured" under the terms and conditions of the Uninsured Motorist Coverage of the Trumbull policy.

20. Non-party Kevin Hartman's vehicle is an "uninsured motor vehicle" under the terms and conditions of the Trumbull policy.

21.     On September 9, 2021, Charles submitted a claim to Defendant Trumbull seeking Uninsured Motorist benefits on all vehicles insured on the policy.

22.     Thereafter, Defendant Trumbull paid the policy limits—$50,000.00—on **<u>one of the vehicles</u>** covered under Policy No. 55PAB942869.

23.     Defendant Trumbull failed and/or refused to pay the remaining policy limits properly owed to Charles on the other three vehicles on the Trumbull policy.

24.     Instead, Defendant Trumbull disclaimed any additional Uninsured Motorist Coverage on the policy. Specifically, Defendant Trumbull alleged Stacked Uninsured Motorist Coverage was not available on the Trumbull policy relying on policy language that fails to preclude Stacked Uninsured Motorist Coverage.

25.     The Limit of Liability clause provides:

**LIMIT OF LIABILITY**

**A.** The limit of liability shown in the Declarations for each person for Uninsured Motorist Coverage is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of **bodily injury** sustained by any one person in any one accident. Subject to this limit for each person, the limit of liability shown in the Declarations for each accident for Uninsured Motorists Coverage is our maximum limit of liability for all damages for **bodily injury** resulting from any one accident.

This is the most we will pay regardless of the number of:
1. **Insureds**;
2. Claims made;
3. Vehicles or premiums shown in the Declarations; or
4. Vehicles involved in the accident.

*See* Exhibit A, Trumbull Policy at 025.[1]

26.     The Limit of Liability language does not preclude Stacked Uninsured Motorist Coverage. *See State Farm Mut. Auto. Ins. Co. v. Lindsey*, 182 Ariz. 329, 331 (1995); *see also Heaton v. Metropolitan Group Prop. And Cas. Ins. Co.*, 2021 WL 6805629 (D.Ariz. Oct. 19, 2021).

---

[1] Terms in **bold** are defined terms in the Trumbull policy.

27. Even if the Limit of Liability language was sufficient to preclude Stacked Uninsured Motorist Coverage—it is not—the Limit of Liability language does not inform insureds of their right to select which coverage will apply in violation of A.R.S. § 20-259.01(H).

28. Defendant Trumbull did not advise Charles, in writing, of his right to select which coverage would apply within 30 days of receiving notice of the collision as required by A.R.S. § 20-259.01(H).

29. Accordingly, Stacked Uninsured Motorist Coverage is permitted even if the Limit of Liability language precluded stacking—which, it does not. See A.R.S. § 20-259.01(H); *see also Schwallie v. American Family Mut. Ins. Co.*, 2013 WL 4478697 (D.Ariz. Aug. 20, 2013).

30. The Two or More Autos Policies clause provides:

**TWO OR MORE AUTO POLICIES**

If this policy and any other insurance policy issued to you by us apply to the same accident, only one of the policies will apply to the accident. You will select the one policy that will apply.

*See* Exhibit A, Trumbull Policy at 026.

31. The Two or More Auto Policies language does not preclude stacked Uninsured Motorist Coverage. *See State Farm Mut. Auto. Ins. Co. v. Lindsey*, 182 Ariz. 329, 331 (1995); *see also Heaton v. Metropolitan Group Prop. And Cas. Ins. Co.*, 2021 WL 6805629 (D.Ariz. Oct. 19, 2021).

32. The Two or More Auto Policies language does not preclude an insured from stacking multiple coverages on the same policy. *See State Farm Mut. Auto. Ins. Co. v. Lindsey*, 182 Ariz. 329, 331 (1995); *see also Heaton v. Metropolitan Group Prop. And Cas. Ins. Co.*, 2021 WL 6805629 (D.Ariz. Oct. 19, 2021).

33. Per the express language of the policy, the Two or More Auto Policies language only precludes insureds from stacking multiple policies, i.e., inter-policy stacking.

34. Charles, however, does not have multiple policies issued to him by Defendant Trumbull.

35. The Two or More Auto Policies language does not apply to Charles' claim for Stacked Uninsured Motorist Coverage.

36. Upon information and belief, Defendant Trumbull failed to conduct a reasonable coverage investigation to determine whether additional coverage was available on Policy No. 55PAB942869.

37. Upon information and belief, Defendant Trumbull failed to conduct a reasonable coverage investigation to determine whether Stacked Uninsured Motorist Coverage was available on Policy No. 55PAB942869.

38. To date, Charles still has not been paid the Uninsured Motorist benefits he is entitled to receive under the terms and conditions of the Trumbull policy.

39. Upon information and belief, Defendants routinely sell Uninsured Motorist Coverage, as well as Underinsured Motorist Coverage, and benefits on multiple vehicles insured on the same policy, but refuse to pay Stacked Uninsured Motorist and Stacked Underinsured Motorist benefits in violation of the terms and conditions of Trumbull policies and in violation of Arizona law, and whose policy language during the relevant period contained the same or substantially similar limit of liability language with respect to uninsured and underinsured motorist bodily injury coverage.

40. Charles brings this declaratory judgment claim pursuant to the Arizona Uniform Declaratory Judgment Act (A.R.S. § 12-1831 to 12-1846) and Rule 57 of the Arizona Rules of Civil Procedure.

41. Charles is an "insured" under the terms and conditions of the Trumbull policy.

42. Charles contends he is entitled to Stacked Uninsured Motorist Coverage under the terms and conditions of the Trumbull policy.

43. Defendant Trumbull, however, contends Uninsured Motorist Coverage is limited to one vehicle on the Trumbull policy, and there is no additional Uninsured Motorist Coverage on the remaining three vehicles on the Trumbull policy.

44. A dispute now exists between Charles and Defendant Trumbull regarding the rights and obligations of the parties under the Trumbull policy.

45. Due to the dispute between the parties, Charles is entitled to a declaration of rights and responsibilities regarding the terms and conditions of the Trumbull policy pursuant to the Arizona Declaratory Judgment Act.

46. Charles seeks a declaration from this Court that he is entitled to Stacked Uninsured Motorist Coverage on the Trumbull policy.

47. Defendant Trumbull's failure to make a good faith offer and refusal to consider payment for Charles' Uninsured Motorist claim constitutes a de facto denial of benefits owed on the Trumbull policy.

48. Defendant Trumbull's failure to make a good faith offer and refusal to pay the contractual Uninsured Motorist benefits owed on the policy is a breach of contract.

49. As a direct and proximate result of the breach, Charles suffered direct and consequential damages including, but not limited to, the contractual Uninsured Motorist benefits owed under the terms and conditions of the Trumbull policy.

50. In every contract of insurance, there is inherent in it the covenant of good faith and fair dealing, which requires an insurer to, among other things, conduct a reasonable investigation, afford and makes its insured aware of all available coverages on the policy—even if they are not demanded—and treat all insureds with equal consideration.

51. Upon information and belief, Defendant Trumbull failed to conduct a reasonable investigation into whether Stacked Uninsured Motorist Coverage is available on the Trumbull policy.

52. In doing so, Defendant Trumbull put its own interests ahead of its insured, Charles, and failed to give equal consideration to his claim.

53. Defendant Trumbull's failure to adequately investigate coverage is a breach of the covenant of good faith and fair dealing.

54. Defendant Trumbull's failure to treat Charles with equal consideration is breach of the covenant of good faith and fair dealing.

55. Defendant Trumbull's failure to make a good faith offer is a breach of the covenant of good faith and fair dealing.

56. Defendant Trumbull's policy requires insured to file a lawsuit to obtain coverage determinations ultimately forcing Charles to file this action to obtain the Uninsured Motorist benefits properly owed to him by Defendant Trumbull. See Exhibit A, Trumbull Policy at 025 ("[D]isputes concerning coverage under this Part may not be arbitrated.").

57. Defendant Trumbull's failure to make reasonable efforts to alleviate the necessity of litigation is a breach of the covenant of good faith and fair dealing.

58. Defendant Trumbull's failure to pay the contractual Stacked Uninsured Motorist benefits owed under the terms and conditions of the Trumbull Policy is a breach of the covenant of good faith and fair dealing.

59. Defendant Trumbull's refusal to stack the available Uninsured Motorist Coverage is contrary to well-established Arizona law as well as the language of the Trumbull policy. As such, Defendant Trumbull's coverage position is unreasonable, is not "fairly debatable," and instead places Defendant Trumbull's own interests ahead of its insured, Charles.

60. Defendant Trumbull's refusal to provide Stacked Uninsured Motorist Coverage is a breach of the covenant of good faith and fair dealing.

61. As a direct and proximate result of Defendant Trumbull's breach of the covenant of good faith and fair dealing, Charles has suffered damages.

62. Upon information and belief, Defendant Trumbull acted with a consistent pattern to undermine the security of its own insurance policy to the detriment of its insureds, including Charles, to the extent that it constitutes a conscious disregard of the

substantial likelihood that such conduct is likely to cause harm and constitutes conduct sufficient to incur a penalty of punitive damages.

63. Charles is, therefore, entitled to punitive damages in an amount sufficient to stop such conduct and deter such future conduct.

## III. JURISDICTION AND VENUE

64. All acts alleged herein arose from occurrences within the State of Arizona.

65. The claims are subject to the jurisdiction of the Superior Court for the State of Arizona and they request compensation in amounts above the minimum jurisdictional limits for this Court.

66. Venue in this Court is proper pursuant to A.R.S. § 12-401.

67. This Court has personal jurisdiction over the parties.

68. This Court has subject matter jurisdiction under § 14(1) and § 14(3) of Article 6 of the Arizona Constitution and A.R.S. § 12-123.

## IV. CLASS ALLEGATIONS

69. Charles brings this action pursuant to Rule 23 of the Arizona Rules of Civil Procedure. He brings this action on his own behalf and on behalf of all class participants pursuant to Rules 23(a), 23(b)(2) and 23(b)(3) of the Arizona Rules of Civil Procedure.

70. Charles proposes the following class of individuals during the relevant limitations period:

> All persons insured under one of Defendants' personal lines automobile policies issued in Arizona that provided uninsured ("UM") or underinsured ("UIM") motorist coverage for more than one motor vehicle, and who received a claim payment equal to the limit of liability for the UM or UIM benefits for only one person/one vehicle (or whose payment was based on the limit of liability for UM or UIM coverage for only one vehicle where the full per accident single vehicle limit was paid to multiple individuals) and who were not notified of their right to select which vehicle's coverage was applicable during the Class Period, as reflected in the agreed-upon list transmitted by Defendants' counsel to Plaintiff's counsel on May 29, 2024.

71. The requirements of Rules 23(a), 23(b)(2) and/or 23(b)(3) of the Arizona Rules of Civil Procedure are met as set forth below.

### A. Numerosity

72. Arizona published cases on numerosity are few and give little guidance. For that reason, among others, Arizona courts look to Federal cases construing Rule 23 as illustrative. *See ESI Ergonomic Solutions, LLC v. United Artists Theatre Circuit, Inc.*, 203 Ariz. 94, 98 n.2 (App. 2002). Under federal law, more than forty class members satisfies the numerosity requirement. 1 NEWBERG ON CLASS ACTIONS, §3.05 at 3-25 (3rd Ed. 1992); MOORE'S FEDERAL PRACTICE, § 23-22(3)(a) (Bender 3rd Ed. 1999); *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3rd Cir. 2001); *Perez v. First American Title Ins.*, 2009 WL 2486003 at *2 (D.Ariz. 2009) ("Generally, 40 or more members will satisfy the numerosity requirement.").

73. With regard to the standard of proof necessary to satisfy class numerosity requirements, "[i]t is not necessary that the members of the class be so clearly identified that any member can be presently ascertained. The court may draw a reasonable inference of the size of the class from the facts before it." *Sherman v. Griepentrog*, 775 F.Supp. 1383, 1389 (D.Nev. 1991) (internal citations omitted).

74. Upon information and belief, Defendants routinely deny Stacked Uninsured Motorist Coverage and Stacked Underinsured Motorist Coverage to their insureds and the numerosity requirement is easily satisfied with respect to the Class.

### B. Commonality

75. The commonality element "requires simply that there exist questions of law or fact common to the class." *Lennon v. First National Bank of Arizona*, 21 Ariz.App. 306, 309 (1974). "The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Parra v. Bashas, Inc.*, 536 F.3d 975, 978 (9th Cir. 2008).

76. The legal issues are not just shared, they are virtually identical. Specifically, the legal issue regarding whether Class Members are entitled to Stacked Uninsured/Underinsured Motorist Coverage on Defendants' policies is identical. While

there may be occasional changes to the policy language for each respective Class Member, the legal issue remains the same.

77. Moreover, the policy language for the Limit of Liability clause and the Two or More Auto Policies clause are **identical for Uninsured and Underinsured Motorist coverage**. *Compare* Exhibit A at Trumbull Policy 020-021 *with* Exhibit A at Trumbull Policy 025, 026. Thus, there is no difference, from a legal standpoint, regarding whether stacking is permitted on Uninsured Motorist coverage or Underinsured Motorist coverage, *i.e.*, either stacking is permitted on both coverages, or it is not permitted on either coverage.

### C.  Typicality

78. There is little Arizona case law discussing specific criteria regarding typicality. Federal law provides: "[U]nder the rule's permissive standards, representative claims are 'typical' is they are reasonably coextensive with those of absent class members; they need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).

79. Charles is in a factual and legal posture identical to the Class Members. He is an insured on an insurance policy with Defendant Trumbull insuring multiple vehicles with Uninsured Motorist Coverage. He was paid the available policy limits on one of the vehicles, but Defendant Trumbull either failed or refused to pay any remaining uninsured motorist benefits on the remaining vehicles of the policy.

80. He is also an insured on an insurance policy with Defendant Trumbull insuring multiple vehicles with Uninsured Motorist Coverage. Although his collision did not implicate Underinsured Motorist coverage, his claim is typical of an underinsured motorist claim with regard to the legal issues that need to be decided. Charles was paid the available policy limits on one of the vehicles, but Defendant Trumbull either failed or refused to pay any remaining benefits on the remaining vehicles of the policy.

**D.     Adequacy**

81.     Under Arizona law, the Class Attorney must be qualified, experienced and reasonably capable. Lead Plaintiffs cannot collude with the defendants and must not have interests that are obviously antagonistic to the interests of the class they seek to represent. *See Lennon*, *supra*, at 309. The burden of proving inadequacy is on the defendant. *See Lewis v. Curtis*, 671 F.2d 779, 788 (3rd Cir. 1982).

82.     To determine whether obvious antagonism of interests exists, Federal courts look to whether (1) a lead plaintiff is a spouse, family member, or employee of counsel; (2) if any counsel if a class member; (3) if there are unusual bonus fees for lead plaintiffs which would create a conflict with class members; (4) whether lead plaintiffs will promptly move for certification. *See Lyon v. State of Arizona*, 80 F.R.D. 665, 667-68 (D.Ariz. 1978).

83.     None of the Class Attorneys are members of the Class.

84.     No Lead Plaintiff is a spouse, family member or employee of the Class Attorney.

85.     Lead Plaintiffs will promptly move for certification.

86.     No bonus fees or incentives have been promised to the Lead Plaintiffs.

87.     The Class Attorneys are also qualified, experienced and reasonably capable, having litigated successfully in this area of law, and having been counsel in prior class actions.

**E.     Rule 23(B)(2)**

88.     Rule 26(b)(2) certification is appropriate if "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive or corresponding declaratory relief with respect to the class as a whole." Ariz.R.Civ.P. 23(b)(2).

89.     Federal law provides: "[I]n order to permit certification under this rule, the claim for monetary damages must be secondary to the primary claim for injunctive or declaratory relief." *Molski v. Gleich*, 318 F.3d 937, 647 (9th Cir. 2003). A Rule 23(b)(2)

1  claim is not limited solely to declaratory and injunctive relief, but such relief must
2  predominate. *See id.*

3      90.    Defendants have acted on grounds with general application to the Class
4  Members: they have disclaimed Stacked Uninsured/Underinsured Motorist Coverage
5  when its insureds have multiple vehicles with Uninsured/Underinsured Motorist
6  Coverage on the same policy.

7      91.    Moreover, the declaratory relief claims predominate over the breach of
8  contract claims, *i.e.*, there can be no relief on the breach of contract claims if the
9  declaratory relief claims fail.

10     92.    The proposed Classes, therefore, meets the requirements for certification
11 under Rule 23(b)(2).

12     93.    Accordingly, Charles requests this Court certify the declaratory judgment,
13 breach of contract and bad faith claims as a class action pursuant to Rule 23(b)(2),
14 ARCP.

**F.    Rule 26(B)(3)**

16     94.    Rule 23(b)(3) certification is appropriate if "questions of law or fact
17 common to the members of the class predominate over any questions affecting individual
18 class members, and . . . a class action is superior to other available methods for fair and
19 efficient adjudication of the controversy." Ariz.R.Civ.P. 23(b)(3).

20     95.    With respect to predomination, the Court should certify a Class even in
21 cases where there is a large factual variance between class members if "questions of law
22 common to all class members" lie at the heart of the case. *See Godbey v. Roosevelt*
23 *School District*, 131 Ariz. 13, 17-18 (App. 1981).

24     96.    Common questions of law (*i.e.*, whether Stacked Uninsured Motorist
25 Coverage and/or Stacked Underinsured Motorist Coverage are available) lie at the heart
26 of this matter. Indeed, if Stacked Uninsured Motorist Coverage and/or Stacked
27 Underinsured Motorist Coverage are not available, the remaining portions of the claims
28 herein are moot.

97. With respect to superiority, Rule 26(b)(3) directs the Court to consider (1) the desirability of concentrating claims in this forum; (2) difficulties of management; (3) current claims by class members; (4) class members' interest in controlling their individual claims. *See* Ariz.R.Civ.P. 23(b)(3).

98. Arizona courts are the only desirable forum as all Class Members were insured under Defendants' policies issued in Arizona.

99. The difficulty in managing the Class is minimal as all policies were issued to Class Members in Arizona, the facts related to the coverage dispute are remarkably uniform, and the case predominately turns on one legal issue.

100. With respect to Class Members' individual interests in controlling the claims, "there is no additional advantage in individual members controlling the prosecution of separate actions." *See Hanlon*, *supra*, at 1023. Indeed, "[t]here would be less litigation or settlement leverage, significantly reduced resources and no greater prospect for recovery." *See id.*

101. The proposed Classes, therefore, meets the requirements for certification under Rule 23(b)(2).

102. Accordingly, Charles requests this Court certify the declaratory judgment, breach of contract and bad faith claims as a class action pursuant to Rule 23(b)(2), ARCP.

**RULE 26.2 TIER DESIGNATION**

Charles Miller has reviewed the Criteria for Assigning Cases to Tiers pursuant to Rule 26.2(b) of the Arizona Rules of Civil Procedure, and hereby certifies this as a Tier 3 case.

WHEREFORE, Charles Miller prays for Judgment against Defendants as follows:

1. Certify this case as a class action pursuant to Rules 23(a), 23(b)(2) and/or 23(b)(3) of the Arizona Rules of Civil Procedure;
2. For breach of contract;
3. For bad faith;

4. For direct and consequential damages, in an amount to be proved at trial;
5. For special damages, in an amount to be proved at trial;
6. For general damages in a fair, just and reasonable sum in excess of the jurisdictional limits of this Court;
7. For a declaration that Defendants' policies do not preclude stacking uninsured motorist coverage for multiples vehicles on the same policy;
8. For a declaration that Defendants' policies do not preclude stacking underinsured motorist coverage for multiple vehicles on the same policy;
9. For his costs incurred herein;
10. For attorney's fees and taxable costs pursuant to A.R.S. §§ 12-341 and 12-341.01;
11. For punitive damages in a fair, just and reasonable sum;
12. For pre- and post-judgment interest at the prevailing statutory rate per annum; and
13. For such other and further relief as this Court may deem just and proper.

DATED this 1st day of July 2024.

        HAGENS BERMAN SOBOL SHAPIRO LLP

        By: *s/ Robert B. Carey*
           Robert B. Carey
           John M. DeStefano
           Tory Beardsley
           11 West Jefferson Street, Suite 1000
           Phoenix, Arizona 85003
           Telephone: (602) 840-5900
           Facsimile: (602) 840-3012
           Email:   rob@hbsslaw.com
                       johnd@hbsslaw.com
                       toryb@hbsslaw.com

        THE SLAVICEK LAW FIRM
           Brett L. Slavicek
           James Fucetola
           Justin Henry
           5500 North 24th Street
           Phoenix, Arizona 85016
           Telephone: (602) 285-4420
           Facsimile: (602) 287-9184
           Email:   brett@slaviceklaw.com
                       james@slaviceklaw.com
                       justin@slaviceklaw.com

        *Attorneys for Plaintiff*