Robert B. Carey (SBN 011186)
John M. DeStefano (SBN 025440)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
11 West Jefferson Street, Suite 1000
Phoenix, Arizona 85003
Telephone: (602) 840-5900
Facsimile: (602) 840-3012
Email:  rob@hbsslaw.com
          johnd@hbsslaw.com

*Attorneys for Plaintiff*

*[Additional counsel on signature page]*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Charles Miller, | Case No. 2:22-cv-01978-PHX-DJH |
| Plaintiff, | |
| v. | **PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION OF THE SETTLEMENT CLASS** |
| Trumbull Insurance Company, Hartford Insurance Company of the Southeast, Twin City Fire Insurance Company, Hartford Underwriters Insurance Company, and Hartford Insurance Company of the Midwest, | |
| Defendants. | |

# TABLE OF CONTENTS

I.     INTRODUCTION ...................................................................................................1

II.    PROCEDURAL HISTORY......................................................................................1

       A.     Related Case History.................................................................................1

       B.     Present Case History and Mediation..........................................................4

III.   SUMMARY OF SETTLEMENT TERMS...............................................................8

       A.     The Settlement Class.................................................................................8

       B.     The Settlement Consideration, Release of Claims, and Anticipated
              Class Recovery.........................................................................................8

       C.     Attorneys' Fees and Costs, Incentive Award, and Administration
              Costs.......................................................................................................10

       D.     Notice and Implementation of Settlement. ..............................................12

       E.     Plan of Distribution.................................................................................13

IV.    ARGUMENT ........................................................................................................14

       A.     The Class should be certified for the purposes of settlement. ..................15

              1.     The Settlement Class is sufficiently numerous. ...........................15

              2.     Questions of law and fact are common to the settlement
                     class.............................................................................................16

              3.     Plaintiff's claim is typical of the Settlement Class's claims....................17

              4.     Plaintiff and Class Counsel are adequate representatives.........................18

              5.     Common questions of law and fact predominate under Rule
                     23(b).............................................................................................19

       B.     The proposed settlement should be preliminarily approved. .............................22

              1.     The settlement is the result of arm's-length negotiations. .........................22

              2.     The settlement has no obvious deficiencies..............................................24

              3.     The proposed settlement does not grant preferential
                     treatment to Plaintiff or segments of the Settlement Class. .....................25

              4.     The settlement falls within the range of possible approval........................26

              5.    The experience and views of counsel weigh in favor of
                    preliminary approval..................................................................27

        C.    The Proposed Class Notice and Plan for Dissemination Comply
              with Rule 23(e) ...........................................................................27

        D.    Proposed Schedule for Dissemination of Notice and Final
              Approval ......................................................................................29

V.    CONCLUSION.........................................................................................30

MOTION FOR PRELIMINARY APPROVAL

# TABLE OF AUTHORITIES

Page(s)

Cases

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
    568 U.S. 455 (2013)...........................................................................................................19, 20

*In re Anthem, Inc. Data Breach Litig.*,
    327 F.R.D. 299 (N.D. Cal. 2018).....................................................................................26

*In re Bluetooth Headset Prods. Liability Litig.*
    654 F.3d 935 (9th Cir. 2011) ...........................................................................................24

*Brian Dorazio v. Allstate Fire and Casualty Insurance Co.*,
    Case No. CV-23-00017-PHX-JJT (D. Ariz.)..................................................................2

*Charles Creasman v. Farmers Casualty Insurance Co.*,
    Case No. CV-22-01820-PHX-DJH (D. Ariz.).................................................................2

*Charles Miller v. Trumbull Insurance Company*,
    Case No. CV-22-010505-PHX-JJT (D. Ariz.).................................................................2

*Churchill Vill., LLC v. Gen. Elec.*,
    361 F.3d 566 (9th Cir. 2004) ...........................................................................................27

*Craig Hacker v. American Family Insurance Co.*,
    Case No. CV-22-01926-PHX-DLR (D. Ariz.) ...............................................................2

*Crystal Lopez v. Liberty Mutual Personal Insurance Co.*,
    Case No. CV-23-00629-PHX-DLR (D. Ariz.) ...............................................................2

*Franklin v. CSAA Gen. Ins. Co.*,
    255 Ariz. 409, 532 P.3d 1145 (2023)...........................................................................4, 16, 23

*Franklin v. CSAA Gen. Ins. Co.*,
    No. CV-22-00540-PHX-JJT, 2022 WL 16631090 (D. Ariz. Nov. 2, 2022) ............................3

*Franklin v. CSAA General Insurance Co.*,
    No. CV-22-00540-PHX-JJT .............................................................................. *passim*

*Head v. Citibank, N.A.*,
    340 F.R.D. 145 (D. Ariz. 2022) .......................................................................................15

*Heaton v. Metro. Grp. Prop. & Cas. Ins. Co.*,
    No. CV-21-00442-PHX-SRB, 2021 WL 6805629 (D. Ariz. Oct. 19, 2021)...........................1

*In re Hyundai & Kia Fuel Econ. Litig.*,
    926 F.3d 539 (9th Cir. 2019) ...........................................................................................20

MOTION FOR PRELIMINARY APPROVAL

*Jesus Caballero v. Economy Preferred Insurance Co.*,
  Case No. CV-22-02023-PHX-MTL (D. Ariz.).................................................................2

*Jodi Moshier v. Safeco Insurance Co. of America*,
  Case No. CV-23-00225-PHX-DLR (D. Ariz.) ............................................................2

*Julian v. Swift Transportation Co. Inc.*,
  No. CV-16-00576-PHX-ROS, 2020 WL 6063293 (D. Ariz. Oct. 14, 2020) ........................12

*Just Film, Inc. v. Buono*,
  847 F.3d 1108 (9th Cir. 2017) ...............................................................................20, 21

*Kleiner v. First Nat. Bank of Atlanta*,
  102 F.R.D. 754 (N.D. Ga. 1983)...........................................................................12, 28

*Knapper v. Cox Commc'ns, Inc.*,
  329 F.R.D. 238 (D. Ariz. 2019) ..................................................................................15

*McClure v. State Farm Life Ins. Co.*,
  341 F.R.D. 242 (D. Ariz. 2022) ..............................................................17, 20, 21, 22

*Morgan Muehlhausen, et al. v. Allstate Fire and Casualty Insurance Co.*,
  Case No. CV-22-01747-PHX-JAT (D. Ariz.) ............................................................2

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
  221 F.R.D. 523 (C.D. Cal. 2004)................................................................................26

*In re Pharm. Indus. Average Wholesale Price Litigation*,
  582 F.3d 156 (1st Cir. 2009)..............................................................................20, 21

*Reid v. I.C. Sys. Inc.*,
  No. CV-12-02661-PHX-ROS, 2018 WL 11352039 (D. Ariz. July 27, 2018),
  *aff'd*, 795 F. App'x 509 (9th Cir. 2019)....................................................................27

*Shirly Haenfler v. Safeco Insurance Co. of America*,
  Case No. 2:23-cv-00822-JJT ....................................................................................2

*Sonoma Sol LLLP v. Truck Ins. Exch.*,
  No. CV-20-00069-PHX-DJH, 2021 WL 5238711 (D. Ariz. Nov. 9, 2021).....................11, 25

*Stacey Trent v. Hartford Insurance Co. of the Southeast*,
  Case No. CV-23-02105-PHX-JJT (D. Ariz.)............................................................2, 6

*Taylor Doyle v. Pekin Insurance Co.*,
  Case No. CV-22-00638-PHX-JJT (D. Ariz.)...............................................................2

*Tinsley v. Faust*,
  No. CV-15-00185-PHX-ROS, 2020 WL 6048315 (D. Ariz. Oct. 13, 2020) ........................26

MOTION FOR PRELIMINARY APPROVAL

*Tyson Foods, Inc. v. Bouaphakeo*,
    577 U.S. 442 (2016)................................................................................19, 20

*In re Wells Fargo & Co. S'holder Derivative Litig.*,
    445 F. Supp. 3d 508 (N.D. Cal. 2020) ..............................................10, 11

*Wolin v. Jaguar Land Rover N. Am., LLC*,
    617 F.3d 1168 (9th Cir. 2010) ..........................................................16, 21

*Zwicky v. Diamond Resorts Mgmt. Inc.*,
    343 F.R.D. 101 (D. Ariz. 2022) ...................................................... *passim*

**Statutes**

A.R.S. § 20-259.01 ............................................................................... *passim*

28 U.S.C. § 1332(d) .......................................................................................5

28 U.S.C. § 1711 *et seq.*...............................................................................13

**Other Authorities**

2 W. Rubenstein, Newberg on Class Actions § 4:50, pp. 196-197 (5th ed. 2012) ......................19

Arizona Rules of Professional Conduct Rule 4.2 ........................................28

Federal Rule of Civil Procedure 23 ................................................... *passim*

MOTION FOR PRELIMINARY APPROVAL

# I.    INTRODUCTION

Plaintiff Charles Miller respectfully moves the Court, for settlement purposes only, to: (1) preliminarily certify the Settlement Class; (2) appoint Plaintiff Charles Miller as the Class Representative for the Settlement Class; (3) appoint Robert Carey of Hagens Berman Sobol Shapiro, LLP ("Hagens Berman" or "Proposed Class Counsel") as Class Counsel for the Settlement Class; (4) preliminarily approve the class action Settlement Agreement[1] (Ex. A hereto), between Plaintiff and Defendant Trumbull Insurance Company ("Trumbull"), Hartford Insurance Company of the Southeast ("HICS"), Twin City Fire Insurance Company ("Twin City"), Hartford Underwriters Insurance Company ("HUIC"), Hartford Insurance Company of the Midwest ("HICM"), and Hartford Casualty Insurance Company ("HCIC") (collectively "Defendants" or "Hartford"); and (5) direct notice to the Settlement Class. This motion is based on Federal Rule of Civil Procedure 23, the supporting declaration, and the evidence and arguments presented in the briefings and at any hearing on this motion to be set by the Court.

# II.    PROCEDURAL HISTORY

## A.    Related Case History

In October 2021, Judge Susan Bolton ruled in favor of the insured plaintiff in *Heaton v. Metropolitan Group Property & Casualty Co.*, holding that Arizona law required stacking of uninsured motorist ("UM")/underinsured ("UIM") motorist coverages within a multi-vehicle policy under A.R.S. § 20-259.01(H), where the insurer did not provide the insured an opportunity to elect which vehicle's coverage was applicable to the claim. *Heaton v. Metro. Grp. Prop. & Cas. Ins. Co.*, No. CV-21-00442-PHX-SRB, 2021 WL 6805629, at *8 (D. Ariz. Oct. 19, 2021). Under that ruling, an insured could collect up to the policy limits on each insured vehicle covered by the policy if they were not provided the opportunity to elect the applicable vehicle's coverage. *Id.*

---

[1] Terms used herein shall have the same meanings as in the Settlement Agreement.

In April 2022, Proposed Class Counsel Hagens Berman filed *Franklin v. CSAA General Insurance Co.*, No. CV-22-00540-PHX-JJT, alleging the same theory against CSAA. *Franklin* was one of over twelve cases filed by Hagens Berman and its co-counsel in this action, the Slavicek Law Firm, during the 2022–2023 timeframe alleging the same theory of liability, including cases against Allstate, Liberty Mutual, Safeco, Travelers, American Family, Pekin Insurance, and Farmers Insurance.[2]

This case against Defendants is one of those suits. Proposed Class Counsel spent significant time and resources investigating *Franklin* and these related cases, with the intention of coordinating litigation efforts across the cases. Declaration of Robert B. Carey ("Carey Decl.") ¶ 3, Ex. B.

*Franklin* became a standard-bearer for the parallel cases because it begat an Arizona Supreme Court ruling affecting all the others. Citing the multiplicity of pending suits that presented the same UM/UIM stacking question, this Court certified two questions to the Arizona Supreme Court in *Franklin*:

> (1) Does A.R.S. § 20-259.01 mandate that a single policy insuring multiple vehicles provides different underinsured motorist (UIM) coverages for each vehicle, or a single UIM coverage that applies to multiple vehicles?
>
> (2) Does A.R.S. § 20-259.01(B) bar an insured from receiving UIM coverage from the policy in an amount greater than the bodily injury liability limits of the policy?

---

[2] *Morgan Muehlhausen, et al. v. Allstate Fire and Casualty Insurance Co.*, Case No. CV-22-01747-PHX-JAT (D. Ariz.); *Brian Dorazio v. Allstate Fire and Casualty Insurance Co.*, Case No. CV-23-00017-PHX-JJT (D. Ariz.); *Shirly Haenfler v. Safeco Insurance Co. of America*, Case No. 2:23-cv-00822-JJT; *Crystal Lopez v. Liberty Mutual Personal Insurance Co.*, Case No. CV-23-00629-PHX-DLR (D. Ariz.); *Jodi Moshier v. Safeco Insurance Co. of America*, Case No. CV-23-00225-PHX-DLR (D. Ariz.); *Charles Miller v. Trumbull Insurance Company*, Case No. CV-22-010505-PHX-JJT (D. Ariz.); *Stacey Trent v. Hartford Insurance Co. of the Southeast*, Case No. CV-23-02105-PHX-JJT (D. Ariz.); *Craig Hacker v. American Family Insurance Co.*, Case No. CV-22-01926-PHX-DLR (D. Ariz.); *Charles Creasman v. Farmers Casualty Insurance Co.*, Case No. CV-22-01820-PHX-DJH (D. Ariz.); *Jesus Caballero v. Economy Preferred Insurance Co.*, Case No. CV-22-02023-PHX-MTL (D. Ariz.); *Taylor Doyle v. Pekin Insurance Co.*, Case No. CV-22-00638-PHX-JJT (D. Ariz.).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Franklin v. CSAA Gen. Ins. Co.*, No. CV-22-00540-PHX-JJT, 2022 WL 16631090, at *1, 2–3 (D. Ariz. Nov. 2, 2022) ("This is the first-filed of eleven known, present actions—four in the District Court and seven in Maricopa County Superior Court—that turn on the resolution of the same question.").

On February 21, 2023, Proposed Class Counsel Hagens Berman filed Franklin's Supplemental Brief Regarding Certified Questions with the Arizona Supreme Court. Carey Decl. ¶ 4. The defendant in *Franklin* similarly filed a supplemental brief that same day. *Id.* ¶ 5. In response to that briefing, four insurance companies and two insurance groups filed a total of five amicus briefs in support of CSAA, totaling seventy-four pages of briefing. *Id.* ¶ 6. Defendant Trumbull was one of the insurance companies that filed an amicus brief in the *Franklin* matter. *Id.* ¶ 7. Hagens Berman filed a combined response to all five amicus briefs, which consisted of thirty-eight pages of additional briefing. *Id.* ¶ 8. The Slavicek Law Firm, co-counsel in this case, filed a separate amicus brief. *Id.* ¶ 9. The Arizona Supreme Court held oral argument on the certified questions on April 18, 2023. *Id.* ¶ 10. John DeStefano of Hagens Berman argued those certified questions before the court. *Id.* ¶ 11.

On July 28, 2023, the Arizona Supreme Court answered the certified questions in favor of plaintiff:

> We hold that § 20-259.01 mandates that a single policy insuring multiple vehicles provides different UIM coverages for each vehicle. Notwithstanding creative policy drafting intended to evade statutory requirements—including technical definitions of coverages and extensive limitation of liability clauses—insurers seeking to prevent insureds from stacking UIM coverages under a single, multi-vehicle policy must employ subsection (H)'s sole prescribed method for limiting stacking. We also hold that § 20-259.01(B), by its plain language and non-stacking function, does not bar an insured from receiving UIM coverage from the policy in an amount greater than the bodily injury or death liability limits of the policy.

MOTION FOR PRELIMINARY APPROVAL

*Franklin v. CSAA Gen. Ins. Co.*, 255 Ariz. 409, 532 P.3d 1145, 1146–47 (2023). The court explained that although the text of A.R.S. § 20-259.01 is "ambiguous, . . . the statute's history and purpose clearly indicate that multi-vehicle policies provide separate UIM coverages for each vehicle." *Id.* at 1148. The court found that subsection (H) provides "the sole means by which insurers may limit UIM/UM stacking" and "to limit stacking under subsection (H), insurers must (1) expressly and plainly limit stacking in the policy and (2) satisfy the notice requirement informing the insured of their 'right to select one policy or coverage' either in the policy itself or in writing to the insured within thirty days after the insurer is notified of the accident." *Id.* at 1148, 1151 (quoting A.R.S. § 20-259.01(H)). The court concluded:

> In answering the certified questions, we hold that (1) § 20-259.01's text, history, and purpose provide that an insured covered by a multi-vehicle policy has necessarily "purchased" multiple UIM coverages for each vehicle under subsection (H); thus, rather than employing singular definitions of "coverage" in their policies, insurers must comply with the statute's requirements in order to prevent insureds from intra-policy stacking; and (2) § 20-259.01(B) does not limit UIM coverage.

*Id.* at 1153.

**B.    Present Case History and Mediation**

On August 11, 2022—while *Franklin* was pending but before this Court certified questions to the Arizona Supreme Court, Plaintiff Charles Miller filed this case in Maricopa County Superior Court. ECF No. 1-3. Like the plaintiff in *Franklin*, Miller's and the putative Class's claims relate to stacking UM/UIM coverage. More specifically, Miller alleges that he was injured in a collision on December 13, 2019, he suffered injuries in excess of $170,000, and the non-party at fault was uninsured. ECF No. 1-3 ¶¶ 7–12. At the time of the collision, Miller was an insured under a Trumbull policy insuring four vehicles, with UM coverage of $50,000 per person and an aggregate limit of

$100,000 per collision.³ *Id.* ¶ 14. On September 9, 2021, Miller submitted a claim to Trumbull for UM benefits for all vehicles insured on the Trumbull policy. *Id.* ¶ 21. Trumbull paid Miller $50,000—the policy limits on one of the vehicles—but refused to pay any claims for coverage on the other three vehicles. *Id.* ¶¶ 22–23. Miller alleges that Trumbull failed to comply with the notice requirements of A.R.S. § 20-259.01(H). *Id.* ¶¶ 27–28. Specifically, Miller alleges that the limitation of liability policy language did it did not inform him of his right to select which coverage would apply, and that within 30 days of receiving notice of the collision, Trumbull also did not provide him written notice of his right to select which coverage would apply. *Id.* ¶¶ 26-28. Miller alleges because Trumbull did not inform him of his right to select which coverage would apply, he was entitled to stack coverage for all insured vehicles. *Id.* ¶ 29.

Miller brought claims for breach of contract and breach of the covenant of good faith and fair dealing, seeking declaratory relief, direct and consequential damages, and punitive damages. *Id.* ¶¶ 42–63. Miller also sought to certify two classes of similarly situated individuals under Arizona Rule of Civil Procedure 23(b)(2) and (b)(3): (1) Trumbull's insureds with UM claims under an Arizona policy that insured more than one vehicle who were paid the UM policy limits on one vehicle on the policy, but where Trumbull either failed or refused to pay UM benefits on any other vehicles on the policy; and (2) Trumbull's insureds with UIM claims under an Arizona policy that insured more than one vehicle who were paid the UIM policy limits on one vehicle on the policy, but where Trumbull either failed or refused to pay UIM benefits on any other vehicles on the policy. *Id.* ¶¶ 71–72.

On September 14, 2022, Trumbull removed the case to this Court under 28 U.S.C. § 1332(d). ECF No. 1. On October 5, 2022, Trumbull filed a Motion to Certify Questions

---

³ Miller also had a separate policy with Essentia Insurance Company, insuring the vehicle he was driving at the time of the accident. ECF No. 1-3 ¶ 12. Essentia paid the policy limits of $50,000 for UM coverage. *Id.* ¶ 13. Miller also received payment from another insurer with whom he had UM coverage.  However, these payments did not satisfy his full damages.

MOTION FOR PRELIMINARY APPROVAL

1    to the Arizona Supreme Court and filed a Motion to Dismiss. ECF Nos. 8–9.  The Court

2    denied the Motion to Certify, finding the "questions proposed by Defendant in this case

3    are contemplated by the certified questions" in *Franklin*. ECF No. 17. The Court noted

4    that Trumbull could file an *amicus curiae* brief in the *Franklin* matter, which it did. *Id.*

5    The Court also denied the Motion to Dismiss "with leave to refile after the Arizona

6    Supreme court's decision on this Court's request to accept and decide the certified

7    questions proposed" in *Franklin*. *Id.* Last, the Court stayed the matter pending the

8    Arizona Supreme Court's decision in *Franklin*. *Id.* On August 1, 2023, after *Franklin* was

9    decided, the Court lifted the stay and ordered Trumbull to respond to the complaint. ECF

10   No. 18.

11          On August 11, 2023, the parties requested an extension for Trumbull to respond to

12   the complaint, so that the parties could engage in pre-certification settlement

13   negotiations, which the Court granted. ECF Nos. 19–20. On September 26, 2023, the

14   parties filed a Joint Status Report, notifying the Court that a mediation was scheduled for

15   November 8, 2023. As part of the mediation discussions, the parties agreed to negotiate

16   and settle all claims related to UM/UIM coverage for policies sold in Arizona by

17   Trumbull, HICS, Twin City, HUIC, HICM, and HCIC (collectively "Hartford"), which

18   are affiliated companies under common management.[4] This included claims brought in

19   *Stacey Trent v. Hartford Insurance Company of the Southeast*, Case No. 2:23-cv-02105-

20   PHX-JJT—a case transferred to this Court as a related matter.  ECF Nos. 24, 29. As part

21   of the global settlement discussions, Stacey Trent entered into an individual settlement

22   with HICS and dismissed her individual claims with prejudice and dismissed any claims

23   brought on behalf of the putative class without prejudice. Those putative class members

24   are included in the proposed Settlement Agreement here.

25

26

27          [4] Along with this motion, Plaintiff has filed an amended complaint (the "Complaint")
     to add the additional Hartford entities as defendants and to revise the class definition to
28   include all defendants.

1      In preparing for mediation, Hartford provided initial class member discovery and

2   data to Plaintiff for the purposes of settlement, which it updated throughout the settlement

3   process. Carey Decl. ¶ 12. Specifically, for insureds that fit within the class definition

4   (meaning they had exhausted the single-vehicle limit of UM/UIM coverage under a

5   multi-vehicle policy, as detailed below), Hartford provided: (1) the policy effective and

6   expiration dates; (2) the number of vehicles on the policy; (3) the date of loss; (4) the

7   notice of loss date; (5) the type of coverage (UM/UIM); (6) the UM/UIM limits per

8   accident and per person; (7) the stacked coverage limit; (8) the amount paid; (9)

9   anticipated future medicals; (10) specials billed; (11) medicals total; (12) lost wages; (13)

10  other insurer payments; and (14) whether the insured signed a release. *Id.* ¶ 13. This

11  information was provided without including any personal identifying information about

12  the putative class members. *Id.* ¶ 14. Plaintiff's counsel drafted a seventeen-page

13  mediation memo and Hartford prepared a nine-page mediation letter, which the parties

14  exchanged. *Id.* ¶ 15. Plaintiff explained in his mediation memo that if the parties went to

15  trial, Plaintiff would seek compensatory damages (which Proposed Class Counsel

16  modeled as described more fully below), interest, and punitive damages. *Id.* ¶ 16.

17      On November 8, 2023, the parties participated in a full day, in-person mediation in

18  Norwalk, Connecticut with David Geronemus, an experienced mediator with class action

19  and insurance coverage experience. The parties did not settle that day but agreed to a

20  second mediation. The parties participated in a second mediation with Mr. Geronemus

21  via Zoom on January 23, 2024. While the parties did not settle at the second mediation,

22  they made progress and continued to negotiate over the next several months. After many

23  months of negotiations facilitated by Mr. Geronemus, the parties agreed on the key terms

24  of the settlement, executing a detailed Term Sheet on May 29, 2024. ECF No. 39. The

25  parties then entered into the final Settlement Agreement on June 27, 2024, agreeing to

26  settle the case for $13,940,000.00. Settlement Agreement, Ex. A.

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### III.    SUMMARY OF SETTLEMENT TERMS

**A.    The Settlement Class**

The settlement encompasses the proposed "Settlement Class," which the parties agree includes:

> All persons insured under one of Defendants' personal lines automobile policies issued in Arizona that provided uninsured ("UM") or underinsured ("UIM") motorist coverage for more than one motor vehicle, and who received a claim payment equal to the limit of liability for the UM or UIM benefits for only one person/one vehicle (or whose payment was based on the limit of liability for UM or UIM coverage for only one vehicle where the full per accident single vehicle limit was paid to multiple individuals) and who were not notified of their right to select which vehicle's coverage was applicable during the Class Period, as reflected in the agreed-upon list transmitted by Defendant's counsel to Plaintiff's counsel on May 29, 2024.

Settlement Agreement ¶ 3, Ex. A. Any member of the proposed Settlement Class is referred to as a "Class Member." "Settlement Class Member" means any person that falls within the definition of the Settlement Class, who does not timely and validly elect to be excluded from the Settlement Class. *Id.* ¶ 5. The Class period, for purposes of this Settlement, means for individuals insured by Trumbull, their dates of loss occurred between August 11, 2016, through the date of the Settlement Agreement, and for individuals insured by HICS, Twin City, HUIC, HICM, and HCIC, their dates of loss occurred between October 10, 2017, through the date of the Settlement Agreement. *Id.* ¶ 3 n.1.

**B.    The Settlement Consideration, Release of Claims, and Anticipated Class Recovery**

The Settlement releases Defendants from all claims that were brought or could have been brought based on the facts and allegations in the Complaint in exchange for a common fund of $13,940,000.00, less any reduction for exclusions as described below

(the "Settlement Fund").[5] *Id.* ¶ 7(a). Proposed Class Counsel has developed extensive statistical evidence and other proof confirming that this settlement amount is fair, reasonable, and adequate in relation to the projected value of the insurance claims themselves. Proposed Class Counsel, with the assistance of experts, previously estimated counterfactual settlement payments using statistical techniques such as Kaplan–Meier curve analysis and maximum likelihood estimation of censored claim data. Carey Decl. ¶ 17. This experience shows that there is a strong relationship between unpaid loss and the available insurance funds. *Id.* ¶ 18. Moreover, this relationship varies by claim time and individual insurance limit. Loss ranges between 10–80% of available incremental insurance limits, depending on claim type and coverage limits. *Id.* ¶ 19. In addition to the statistical methodologies used to calculate damages, Plaintiff's approach considered, for each class member, the respective special damages and Defendants' defenses relating to timeliness and release. *Id.* ¶ 20. Additionally, the Settlement Fund value is within the aggregate actual high and low exposure estimates that Defendants calculated at the time the claims were received (closer to the high end), before taking into account any adjustments for Defendants' defenses of release and timeliness. This confirms that the Settlement is an excellent result for the Class Members because some Class Members may have received nothing in the course of ordinary claim adjudication if Defendants had prevailed on their defenses.

In making this Settlement, Proposed Class Counsel considered the risks of going to trial including the possibility that a trial could result in a smaller or zero recovery for the Settlement Class, the time and resources that would be expended by both parties and the Court, and the possibility of delay caused by any appeal if Plaintiff did prevail. And while Plaintiff may have recovered more at trial, there is always a risk of losing at trial (even with a meritorious case) for any number of reasons. There are also risks relating to

---

[5] The claims released include breach of contract and breach of the covenant of good faith and fair dealing.

admissibility of evidence and class certification. Awards of interest and punitive damages are discretionary, as is the amount of compensatory damages awarded, even if the proof is compelling. Even if Plaintiff prevails at trial, the delay and other financial risks of an appeal (even if meritless) are considerable, and appeals are commonplace in insurance cases. Finally, early resolution of this case avoids significant litigation costs and expert fees, greater attorneys' fees, and further loss of the time value of money on any recovery.

**C.    Attorneys' Fees and Costs, Incentive Award, and Administration Costs**

Because this is a common fund settlement, the costs of notice and distribution, attorneys' fees and costs, and the service award for the Class Representative will be paid of the Settlement Fund. The estimated costs of notice and distribution are $17,626, with a fixed cap of $18,000. Carey Decl. ¶ 21. Through June 28, 2024, Class Counsel has advanced costs of $56,388.72 and will seek no more than $60,000 in costs, absent an appeal. *Id.* ¶ 22. Class Counsel will request a fee award of up to 30% of the total Settlement Fund.

When awarding fees under a common fund in the Ninth Circuit, courts generally start with the 25% benchmark and adjust upward or downward depending on:

> (1)    The extent to which class counsel achieved exceptional results for the class;
>
> (2)    Whether the case was risky for class counsel;
>
> (3)    Whether counsel's performance generated benefits beyond the cash fund;
>
> (4)    The market rate for the particular field of law (in some circumstances);
>
> (5)    The burdens class counsel experienced while litigating the case (e.g., cost, duration, foregoing other work); and
>
> (6)    Whether the case was handled on a contingency basis.

*In re Wells Fargo & Co. S'holder Derivative Litig.,* 445 F. Supp. 3d 508, 519 (N.D. Cal. 2020) (quoting *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 954–55 (9th Cir. 2015), *aff'd*, 845 F. App'x 563 (9th Cir. 2021)). Class Counsel's work and success in this case merits an upward adjustment of up to 5%, for a total fee of 30%. Private counsel entering into a contingent fee agreement for these types of cases (breach of contract and

insurance bad faith in the context of an automobile injury) routinely request and receive (as expert testimony will show) a fee of 40% of the gross recovery achieved. Class Counsel's skill and effort, not only in this novel and risky case but also in *Franklin* (which made this settlement possible), produced an extraordinary result. The *Franklin* decision confirmed that multiple coverages existed and could be stacked under a single insurance policy insuring multiple vehicles—the threshold issue in this case. Beyond this, Class Counsel's skill and expertise in developing the law and evidence is what made this Settlement possible. The Settlement permits every class member to receive a significant recovery without having to submit a claim or even knowing about the harm to their interests or having to retain private counsel and engage in a battle with their own insurer. Class Members will pay less than the established rate for a recovery devoid of the friction and unpleasantness that can accompany litigation. Proposed Class Counsel will more fully support their request, including detailing the relevant circumstances of the *Wells Fargo* factors, in their motion for attorneys' fees.

In moving for attorneys' fees, Plaintiff requests that the Court decline to adopt the optional procedures set forth in LRCiv 54.2(j). There will be a single fee request made in this case by Proposed Class Counsel and its team that worked on the case—there will not be multiple or competing fee requests that would require the assistance of a fee committee or special master. Additionally, the common fund payment is a discrete, negotiated cash benefit that is easily ascertained. Class Members will have more than sufficient information about the fee request. Plaintiff's proposed Notice includes the amount of fees and maximum amount of costs Proposed Class Counsel will seek. And under Plaintiff's proposed schedule, the fee motion will be filed thirty days before the objection deadline and be posted on the settlement website for the Class Members to review. Moreover, there is a known market for these types of claims, providing easy insight into what a reasonable fee is in the circumstances.

For a service award, Proposed Class Counsel will also seek an award of $7,500 for Plaintiff Charles Miller out of the Settlement Fund. "In the Ninth Circuit, an incentive

award of $5,000 is 'presumptively reasonable,'" and may be adjusted up or down depending on effort. *Sonoma Sol LLLP v. Truck Ins. Exch.*, No. CV-20-00069-PHX-DJH, 2021 WL 5238711, at *6 (D. Ariz. Nov. 9, 2021) (citations omitted). Here, a slightly higher award is reasonable. Miller has been actively involved in this litigation and without his willingness to come forward and prosecute the action, the Settlement Class Members would have received nothing for their injuries. Plaintiff spent significant time assisting Class Counsel in investigating and prosecuting this action. Plaintiff assisted with drafting his factual allegations in the Complaint, and was involved in the settlement process, including traveling from Arizona to Connecticut over the course of three days, to attend an all-day, in person mediation. Carey Decl. ¶ 23. Given Miller's efforts and the significant amount the Class Members will receive, an award of $7,500 is reasonable. *See Julian v. Swift Transportation Co. Inc.,* No. CV-16-00576-PHX-ROS, 2020 WL 6063293, at *3 (D. Ariz. Oct. 14, 2020) (finding award of $15,000 reasonable where plaintiff traveled to Pheonix for his deposition and in light of amount other class members would receive). Class Counsel will more fully support this request in their motion for attorneys' fees.

**D.      Notice and Implementation of Settlement.**

Plaintiff has attached a proposed Settlement Class Notice and proposes the following plan for the dissemination of that Notice. Long Form Notice, Ex. C. Plaintiff proposes notifying the Settlement Class, which consists of 359 Class Members, via first class U.S. mail. Settlement Agreement ¶ 9. For Class Members whose emails are available, notice shall also be sent by email. *Id.* Plaintiff proposes using Epiq Class Action & Claims Solutions, Inc. ("Epiq") along with Epiq's Notice business unit, Hilsoft Notifications ("Hilsoft") as the Settlement Administrator.

Hartford will provide to Epiq and Class Counsel the names, addresses, email addresses, and phone numbers (to the extent available) for all members of the Settlement Class. *Id.* ¶ 11. Using that data, Epiq will mail the Notice form to all Class Members and email the Class Members whose email addresses are available. *Id.* With the Court's

12

approval, Class Counsel will also contact the Class Members to provide information or answer questions that will aid "prospective class members in deciding whether or not to join the class action." *Kleiner v. First Nat. Bank of Atlanta*, 102 F.R.D. 754, 769 (N.D. Ga. 1983), *aff'd in part, vacated in part on other grounds*, 751 F.2d 1193 (11th Cir. 1985). Additional details on the notice plan are set forth in Section IV.C below.

Notice is also required under the Class Action Fairness Act, 28 U.S.C. § 1711 *et seq.* That notice will be provided to the appropriate state and federal officials no later than ten days after the filing of this Motion. The cost of notice will be paid out of the settlement fund, which Epiq estimates will cost $4,300, which amount is included in the estimated costs of administration above. Carey Decl. ¶ 21.

**E.    Plan of Distribution**

Plaintiff proposes providing claim payments to every member of the Settlement Class, with the "Net Settlement Fund" (the Settlement Fund less administration costs, attorneys' fees, costs, any service award and a $200,000 reserve for Supplemental Recovery Fund, discussed further below) being distributed among the Settlement Class in accordance with the allocated percentages as described in the Settlement Agreement. Settlement Agreement ¶ 7. Class Counsel, in consultation with experts, has calculated an "Initial Allocation" for each of Settlement Class Members. *Id.* ¶ 7(d). The Initial Allocation is based on the proportional valuation of each Settlement Class Member's damages, the submitted medical bills and other economic damages, the proportion of such damages relative to policy limits, payments already received by the Settlement Class Members, and the applicability of Defendants' defenses related to timeliness and release. *Id.*

If any Settlement Class Members believe their Initial Allocation does not fully represent their damages, they can submit a request on the settlement website to have their claim value modified by Class Counsel. *Id.* If the total valid requests exceed $200,000, the Supplemental Recovery Fund shall be distributed proportionally among the Settlement Class Members making those valid requests. *Id.* If the total requests are less

than $200,000.00, the remaining Supplemental Recovery Fund shall be added back to the Net Settlement Fund. *Id.* The deadline to request an increase shall be the same date to request exclusion. *Id.* After the deadline for Class Members to request exclusion has passed and the exclusions are known, the Settlement Fund will be reduced for each Class Member who has requested exclusion, by the percentages of their Initial allocation. *Id.* Class Counsel will proportionally recalculate the percentage allocation of the Net Settlement Fund for the remaining Settlement Class Members, to reflect the reduction in the number of Settlement Class Members and reduced Settlement Fund. *Id.* This "Final Allocation" will represent each Settlement Class Member's share of the Net Settlement Fund. *Id.*

As this Settlement relates to claims involving medical expenses, which may have been paid by Medicare and/or Medicaid, Plaintiff's counsel will work with Settlement Class Members to satisfy any valid and enforceable Medicare and/or Medicaid liens that may exist in connection with each Settlement Class Member's Final Allocation. *Id.* ¶ 8.

After the Settlement receives Final Approval, Epiq will mail checks via U.S. Mail to each of the Settlement Class Members and to satisfy any Medicare/Medicaid liens identified. *Id.* ¶ 7(e). If there are unclaimed funds, those funds shall first be available to address any additional administration costs that were actually incurred by Epiq but exceeded the agreed cap. *Id.* ¶ 7(f). If there are remaining unclaimed funds, the parties agree to meet and confer on whether to do a second distribution to the Settlement Class or to distribute those funds to a *cy pres* recipient. *Id.* The parties also agree to meet and confer on the identity of the *cy pres* recipient. *Id.* Any proposed subsequent distribution, either to the Settlement Class or to a *cy pres* recipient, will then be submitted to the Court for approval. *Id.* The Parties agreed in the Settlement Agreement that there will be no reversion of unclaimed funds to Hartford. *Id.*

## IV.    ARGUMENT

"The Ninth Circuit has declared a strong judicial policy that favors settlement of class actions." *Zwicky v. Diamond Resorts Mgmt. Inc.*, 343 F.R.D. 101, 112 (D. Ariz.

2022) (citing cases). Where parties reach settlement before class certification, courts must approve both "the propriety of certification" and "the fairness of the settlement." *Id.* at 113. Here, the Settlement Class should be certified under Federal Rule of Civil Procedure 23(b)(3) and the settlement is "fair, reasonable, and adequate" under Rule 23(e).[6]

**A.     The Class should be certified for the purposes of settlement.**

"A class action will only be certified if it meets the four prerequisites identified in Federal Rule of Civil Procedure ('Rule') 23(a) and additionally fits within one of the three subdivisions of Rule 23(b)." *Zwicky*, 343 F.R.D. at 113. Rule 23(a) requires the Court to examine whether: (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law and fact common to the class, (3) the claims and defenses of the representative parties are typical of the claims and defenses of the class, and (4) the representative parties will fairly and adequately protect the class. Fed. R. Civ. P. 23(a)(1)–(4). Rule 23(b)(3) requires the Court to determine whether "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods." Fed. R. Civ. P. 23(b)(3). Plaintiff can show that the Settlement Class meets the requirements of Rules 23(a) and (b)(3) and should be certified for the purpose of Settlement.

**1.     The Settlement Class is sufficiently numerous.**

The Settlement Class meets the numerosity standard. Numerosity is not "tied to any fixed numerical threshold." *Zwicky*, 343 F.R.D. at 114. "Generally, forty or more members will satisfy the numerosity requirement." *Knapper v. Cox Commc'ns, Inc.*, 329 F.R.D. 238, 241 (D. Ariz. 2019). "[N]umerosity is met when general knowledge and common sense indicate that joinder would be impracticable." *Id.* Numerosity "requires examination of the specific facts of each case and imposes no absolute limitations." *Head v. Citibank, N.A.*, 340 F.R.D. 145, 149 (D. Ariz. 2022) (citations omitted). Here there are

---

[6] Defendants do not oppose class certification for settlement purposes only. However, they do not join the analysis presented and reserve all rights to contest certification in the event that the Settlement is not approved or the Effective Date is not reached.

over 350 Settlement Class Members, which is more than sufficient to meet numerosity. Each of the Settlement Class Member have identical legal claims—they each had more than one vehicle insured under a single policy issued by one of the Defendants, they allege they were not informed of their right to select coverage under A.R.S. § 20-259.01(H), and they allege Hartford did not provide them with stacked coverage. Central legal issues were decided by the Arizona Supreme Court. The court held that "insurers seeking to prevent insureds from stacking UIM coverages under a single, multi-vehicle policy must employ subsection (H)'s sole prescribed method for limiting stacking." *Franklin*, 532 P.3d at 1147. It also held that when the required statutory notice is not given, insurers cannot "prevent insureds from intra-policy stacking." *Id.* at 1153. Because the only issues to be decided for all Settlement Class Members is whether they received the required notice, whether they received stacked coverage, and the amount of damages, common sense indicates that joinder is both impracticable and a waste of judicial resources. The Court should find numerosity is met.

### 2.    Questions of law and fact are common to the settlement class.

Rule 23(a)(2) requires the existence of "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "Commonality exists where class members' 'situations share a common issue of law or fact and are sufficiently parallel to insure a vigorous and full presentation of all claims for relief.'" *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1172 (9th Cir. 2010) (citation omitted). "Because the Ninth Circuit construes commonality liberally, it is not necessary that all questions of law and fact be common. The commonality requirement is met when the common questions it has raised are apt to drive the resolution of the litigation." *Zwicky*, 343 F.R.D. at 114 (internal quotation, alteration, and citations omitted).

Commonality is satisfied here. The same allegations apply to each of the proposed Settlement Class Members. Plaintiff alleges that all Settlement Class Members purchased a Hartford policy in Arizona that included multi-vehicle UM/UIM coverage and the same or substantially same limitation of liability policy language. Plaintiff further alleges that

each Settlement Class Member requested UM/UIM coverage from Hartford but only received the policy limit for one covered vehicle. Plaintiff also alleges that Hartford did not provide the required notice under A.R.S. § 20-259.01(H) to the Settlement Class Members, either through the policy language or by separate written notice.

Plaintiff's causes of action are also identical for the Settlement Class. Plaintiff's claims for breach of contract and breach of the covenant of good faith and fair dealing all ask the same question: Whether Hartford breached its contracts with the Settlement Class when it failed to provide the Settlement Class Members with stacked coverage, after not providing the notice required by A.R.S. § 20-259(H) either in the policy or by separate letter. *See McClure v. State Farm Life Ins. Co.*, 341 F.R.D. 242, 250 (D. Ariz. 2022) ("Plaintiff has satisfied the commonality requirement because each claim is based on a form contract and a uniform course of conduct towards each policyholder by State Farm."). And, as all the insurance policies at issue are Arizona policies, Arizona law controls and applies to each member of the Settlement Class. Commonality is met in this case.

### 3. Plaintiff's claim is typical of the Settlement Class's claims.

"Typicality requires that the named plaintiff have claims 'reasonably coextensive with those of absent class members,' but the claims do not have to be 'substantially identical.'" *Zwicky*, 343 F.R.D. at 115 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)). "The test for typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Id.* (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)).

Plaintiff has no individual claims that differ from the Settlement Class's claims. Plaintiff had a Trumbull policy, that provided UM/UIM coverage on more than one vehicle, he requested UM coverage from Hartford that exceeded the limit of UM coverage on one vehicle, he alleges Hartford did not provide him the required statutory

notice to prevent stacking and allow him to choose UM coverage, and Plaintiff only received payment in the amount of the single (one-vehicle) UM limit. Like Plaintiff, all Settlement Class Members had a Hartford policy that provided UM/UIM coverage for more than one vehicle, they requested UM/UIM coverage from Hartford, Hartford allegedly did not provide them the required statutory notice to prevent stacking and allow them to choose their UM/UIM coverage, and they only received UM/UIM coverage for one vehicle. Plaintiff's claims all sound in contract, alleging that Hartford breached its contractual obligations by not paying for additional UM/UIM coverage. Like Plaintiff, the Settlement Class Members have the identical breach of contract claims. Plaintiff meets the typicality requirement.

**4.    Plaintiff and Class Counsel are adequate representatives.**

"To resolve the question of legal adequacy, the Court must answer two questions: (1) do the named plaintiff and her counsel have any conflicts of interest with other class members and (2) has the named plaintiff and her counsel vigorously prosecuted the action on behalf of the class?" *Zwicky*, 343 F.R.D. at 116 (citing *Hanlon*, 150 F.3d at 1020). "This adequacy inquiry considers a number of factors, including 'the qualifications of counsel for the representatives, an absence of antagonism, a sharing of interests between representatives and absentees, and the unlikelihood that the suit is collusive.'" *Id.* (citing *Brown v. Ticor Title Ins.*, 982 F.2d 386, 390 (9th Cir. 1992)). "The adequacy-of-representation requirement tend[s] to merge with the commonality and typicality criteria of Rule 23(a)." *Id.* (quoting *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 626 n.20 (1997)).

There are no conflicts of interest between Plaintiff and Class Counsel and the Settlement Class. As shown above, commonality and typicality are met, showing there are no conflicts between Plaintiff and the Settlement Class. *See Zwicky*, 343 F.R.D. at 116 (finding no conflict where commonality and typicality are met). And Class Counsel has no conflict with the Settlement Class, having litigated this case and related cases, including *Franklin*, which yielded a favorable decision for Arizona insureds.

"The second prong of the adequacy inquiry examines the vigor with which Plaintiffs and their counsel have pursued the common claims." *Zwicky*, 343 F.R.D. at 116. Here, Plaintiff has fulfilled his duties as a class representative, assisting with the litigation when asked. Hagens Berman Sobol Shapiro LLP is adequate counsel. Hagens Berman has extensive experience in complex and class-action litigation, including insurance litigation. ==Hagens Berman Firm Resume, Ex. D.== And it has adequately litigated this case, getting a favorable decision in *Franklin*, which has benefited the Settlement Class Members here. Adequacy is met.

**5.     Common questions of law and fact predominate under Rule 23(b).**

A class action may be maintained under Rule 23(b)(3) if (1) "the court finds that questions of law or fact common to class members predominate over any questions affecting only individual members," and (2) "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *Zwicky*, 343 F.R.D. at 117 (quoting Fed. R. Civ. P. 23(b)(3)). This case meets both the predominance and superiority requirements needed for class certification.

**a.     Common questions predominate in this case.**

"Because Rule 23(a)(3) already considers commonality, the focus of the Rule 23(b)(3) predominance inquiry is on the balance between individual and common issues." *Zwicky*, 343 F.R.D. at 117. "An individual question is one where 'members of a proposed class will need to present evidence that varies from member to member,' while a common question is one where 'the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof.'" *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (quoting 2 W. Rubenstein, Newberg on Class Actions § 4:50, pp. 196–197 (5th ed. 2012)); *see also Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 467 (2013) (when an issue in the case can be proven through evidence common to the class, it is a "'common questio[n]' for purposes of Rule 23(b)(3)"). Here individual issues do not outweigh common issues. As established above, the facts and legal issues are common to the class. Plaintiff contends

that liability will be established by the policy forms, standardized letters, and uniform practices of the insurer; and where there is a form insurance contract with common treatment of the class members, predominance is met. *See McClure*, 341 F.R.D. at 252 (finding predominance in breach-of-contract claim against insurance company, noting a "claim for breach of a standard form contract or company policy often may be suitable for class-wide treatment" (quoting *Garza v. Gama*, 379 P.3d 1004, 1007 (Ariz. Ct. App. 2016))). Thus, the only question is whether there any individual issues outweigh these common issues.

And as *Amgen* correctly notes, when the proof is common, individualized issues do not predominate because the result is simply that, if the class fails in its proof, its claim will fail and "there will be no remaining individual questions to adjudicate." *Amgen*, 568 U.S. at 469. Here, liability and causation would be established by each class member using the same evidence, rendering it suitable for class treatment and leaving the merits determination for the factfinder.

Moreover, "[w]hen 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.'" *Tyson Foods,* 577 U.S. at 453 (quoting 7AA C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 1778, pp. 123–124 (3d ed. 2005)). In settlement classes, whether a class is sufficiently cohesive to satisfy predominance "is informed by whether certification is for litigation or settlement." *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 558 (9th Cir. 2019). The result is that, in settlements such as this, "the district court need not consider trial manageability issues." *Id.* at 563.

While each Settlement Class Member has varying damages, those issues do not create a predominance problem. *See Just Film, Inc. v. Buono*, 847 F.3d 1108, 1121 (9th Cir. 2017) ("That some individualized calculations may be necessary does not defeat finding predominance."). Damages can still be calculated on a classwide basis using a set

formula or statistical estimations, as was done here. *In re Pharm. Indus. Average Wholesale Price Litigation*, 582 F.3d 156, 197–98 (1st Cir. 2009). Indeed, "the use of aggregate damages calculations is well established in federal court and implied by the very existence of the class action mechanism itself." *Id.* at 197. With the assistance of a damages' expert, Proposed Class Counsel applied a reasonable formula to determine each Settlement Class Member's portion of damages. Using data provided by Hartford, that formula accounted for the date of the claim, the amount of UM/UIM coverage available, the amount of damages, whether the Class Member had a statute of limitations issue on the contract claim, severity of injury, and whether the Settlement Class Member signed a release. As a general rule, affirmative defenses do not create a predominance issue, *see McClure*, 341 F.R.D. at 253–54 (rejecting argument that statute of limitations defense created predominance issue and citing cases), and the Settlement Agreement accounted for those defenses by discounting Class Members' claims who had a statute of limitations issue on the contract claim and/or who signed a release. After the damages were calculated for each Settlement Class Member, the damages were totaled, and each Class Member's percentage of the total damages was determined. This method of calculating damages does not defeat predominance. *See Just Film, Inc.*, 847 F.3d at 1121 ("That some individualized calculations may be necessary does not defeat finding predominance."); *McClure*, 341 F.R.D. at 254 (finding predominance where damages model was "applied on a class-wide basis to calculate damages for each individual policyholder in the class"). Predominance is met in this case.

### b.    A class action is the superior in this case.

"[T]he purpose of the superiority requirement is to assure that the class action is the most efficient and effective means of resolving the controversy." *Wolin*, 617 F.3d at 1175 (citation omitted). "Where classwide litigation of common issues will reduce litigation costs and promote greater efficiency, a class action may be superior to other methods of litigation." *Zwicky*, 343 F.R.D. at 118 (quoting *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996)). Here a class action will reduce litigation costs

and promote greater efficiency. Having 359 class members file individual cases—particularly where the causes of action and facts are basically identical—would increase litigation costs, waste party resources, and waste the Court's resources. *See McClure*, 341 F.R.D. at 254 (finding superiority where "case involves the interpretation of a form contract, the interpretation of which will apply to all class members making class action an efficient form of adjudication"). Additionally, while the damages vary among Settlement Class Members, many of their claims are too small to make individual litigation possible. *See id.* ("Furthermore, because the recoveries of each individual class member will be relatively small, a class action is superior to other methods of adjudication.") A class action is superior in this case.

**B.      The proposed settlement should be preliminarily approved.**

Federal Rule of Civil Procedure 23(e) requires judicial approval of any settlement of class action claims. Preliminary approval is appropriate "where the proposed settlement does not disclose grounds to doubt its fairness and lacks 'obvious deficiencies.'" *Zwicky*, 343 F.R.D. at 119–20 (citations omitted). In determining whether a settlement is fair, reasonable, and adequate at the preliminary approval phase, "courts need only evaluate whether the proposed settlement (1) appears to be the product of serious, informed, non-collusive negotiations, (2) has no obvious deficiency, (3) does not improperly grant preferential treatment to class representatives or segments of the class and (4) falls within the range of possible approval." *Id.* at 119 (citations omitted, cleaned up). Each of these factors weighs in favor of approving the settlement.

**1.      The settlement is the result of arm's-length negotiations.**

Weighing in favor of preliminary approval, the settlement arises out of informed, arm's length negotiations among counsel for the parties. The parties reached agreement after Proposed Class Counsel obtained a ruling from the Arizona Supreme Court in *Franklin* that established that insurance companies must stack UM/UIM coverage where an insurer did not provide the required notice to select coverage. Hartford opposed those efforts in *Franklin* by filing an amicus brief, making it well versed with the court's ruling

that insurers were required to stack coverage if they did not give the required notice under A.R.S. § 20-259.01(H). As the Arizona Supreme Court has decided some of the key legal issues in the case, the only outstanding factual issues in this case are whether Hartford provided the required notice under A.R.S. § 20-259.01(H) and, if not, whether Hartford's insureds were paid for stacked coverage. Rather than litigate further, Hartford and Plaintiff reached a settlement that benefits both sides.

"Particularly with settlements reached prior to class certification, enough information must exist for the Court to assess 'the strengths and weaknesses of the parties' claims and defenses . . . and consider how class members will benefit from settlement' to determine if it is fair and adequate." *Zwicky*, 343 F.R.D. at 120 (citations omitted). "In considering a proposed settlement, a court therefore bears an obligation to first evaluate the scope and effectiveness of the investigation plaintiff's counsel conducted prior to reaching an agreement." *Id.* Even though this case was settled before class certification and before any formal discovery took place, the Court can assess the strengths and weaknesses of Plaintiff's claims and Hartford's defenses because those same claims and defenses were at issue in *Franklin*.

Relying on the ruling in *Franklin*, Plaintiff contends he has a strong case for breach of contract by establishing that Hartford did not provide the required notice under A.R.S. § 20-259.01(H) and that Hartford did not stack coverage. Nothing in Miller's policy advises him of his right to select coverage, and he did not receive a separate letter from Hartford. While Hartford denies liability, the Arizona Supreme Court held that insurers "seeking to prevent insureds from stacking UIM coverages under a single, multi-vehicle policy must employ subsection (H)'s sole prescribed method for limiting stacking." *Franklin*, 532 P.3d at 1146. The court went to describe what is required: "[I]nsurers must (1) expressly and plainly limit stacking in the policy and (2) satisfy the notice requirement informing the insured of their right to select one policy or coverage either in the policy itself or in writing to the insured within thirty days after the insurer is notified of the accident." *Id.* at 1148 (cleaned up, citations omitted). In settling this case,

Hartford identified all insureds who made a claim for UM/UIM benefits and exhausted

the single (unstacked) policy limit under a multi-vehicle policy and were not provided

with an election letter. Based on Hartford's policy language, and its claim records,

Plaintiff contends he could show, if the case proceeded, that Class Members did not

receive the required opportunity to elect and did not receive stacked coverage. And while

Hartford denies liability, it again identified all Settlement Class Members who did not

receive stacked coverage and did not receive an election letter. Based on this information,

the Court should find that the Settlement is based on an informed, arm's-length

negotiation.

**2.      The settlement has no obvious deficiencies.**

There are no obvious deficiencies in the proposed settlement. The Ninth Circuit

has pointed to three factors as troubling signs of a potential disregard for the class's

interests during the course of negotiating and pre-certification settlement: (1) when class

"counsel receive a disproportionate distribution of the settlement, or when the class

receives no monetary distribution but class counsel are amply rewarded;" (2) "when the

parties negotiate a 'clear sailing' arrangement that provides for the payment of attorneys'

fees separate and apart from class funds;" and (3) when the parties arrange for fees not

awarded to class counsel to revert to the defendants rather than the class. *In re Bluetooth

Headset Prods. Liability Litig.* 654 F.3d 935, 947 (9th Cir. 2011) (citations omitted); *see

also Zwicky*, 343 F.R.D. at 121 (same). None of those deficiencies are present here.

Here, the Settlement Class will receive a majority of the Settlement Fund and each

of the Settlement Class Members will receive a significant recovery. There is no clear

sailing provision. Rather, reasonable attorneys' fees will be awarded out of the Settlement

Fund as determined by the Court. Last, there is no reversion to Hartford. Even in the case

where a Settlement Class Member does not cash his or her check—which is unlikely

given the number of Settlement Class Members and the size of the recoveries—the

Settlement Agreement requires the parties to use the funds for unanticipated

administration costs and/or to meet and confer about whether it is financially feasible to

24

1 redistribute those funds to the remaining Settlement Class Members or select a *cy pres*

2 recipient. And any such decision must be approved by the Court. None of the *Bluetooth*

3 deficiencies are present in this case.

4    **3.    The proposed settlement does not grant preferential treatment to Plaintiff or segments of the Settlement Class.**

5

6 There is no preferential treatment for Miller in the proposed settlement. Plaintiff

7 will request a modest incentive fee of $7,500, which is only slightly above the standard

8 incentive fee award. *Sonoma Sol LLLP*, 2021 WL 5238711, at *6. Additionally, the

9 average recovery of $38,830[7] (less any approved payments for attorneys' fees, costs,

10 service award and administration expense) is significantly more than the requested

11 incentive fee. "To assess whether an incentive payment is excessive, district courts

12 balance 'the number of named plaintiffs receiving incentive payments, the proportion of

13 the payments relative to the settlement amount, and the size of each payment.'" *Zwicky*,

14 343 F.R.D. at 123 (quoting *Staton v. Boeing Co.*, 327 F.3d 938, 975 (9th Cir. 2003)).

15 Here, there is only one incentive award, the proposed incentive award constitutes

16 approximately fifty-four thousandths of a percent (0.054%) of the Settlement Fund. The

17 settlement does not give Plaintiff preferential treatment; in fact, Plaintiff sacrificed what

18 he could have recovered in individual litigation to ensure the entire class was

19 compensated.

20 There also is not any preferential treatment for segments of the Settlement Class.

21 Each Settlement Class Member's damages are based entirely on what their actual

22 damages were, the amount of available UM/UIM coverage they had, and whether they

23 have a statute of limitations issue or signed a release. While the damages among

24 Settlement Class Members vary, that variation is due to the varying UM/UIM coverage

25 and damages, as well as available affirmative defenses. The proposed settlement is fair to

26 the Settlement Class.

27

28    [7] The average recovery is calculated by dividing the total Settlement Fund by the number of class members.

MOTION FOR PRELIMINARY APPROVAL

### 4.    The settlement falls within the range of possible approval.

To determine whether a settlement 'falls within the range of possible approval,' courts focus on 'substantive fairness and adequacy' and 'consider plaintiffs' expected recovery balanced against the value of the settlement offer.'" *Zwicky*, 343 F.R.D. at 124 (citing *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007)). "The Ninth Circuit in particular 'puts a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution, and has never prescribed a particular formula by which that outcome must be tested." *B.K. by next friend Tinsley v. Faust*, No. CV-15-00185-PHX-ROS, 2020 WL 6048315, at *2 (D. Ariz. Oct. 13, 2020) (citing *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009)). "Estimates of what constitutes a fair settlement figure are tempered by factors such as the risk of losing at trial, the expense of litigating the case, and the expected delay in recovery (often measured in years)." *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 322 (N.D. Cal. 2018) (citation omitted).

Here, the settlement value is within the actual exposure range calculated by Defendants during individual claims review (closer to the high range), prior to making any adjustment for Defendants' defenses of limitations period and release, which may have resulted in certain Class Members receiving nothing during an ordinary claim review process. Moreover, Proposed Class Counsel ran several models to predict the settlement value of the Class Member claims, including models for other cases, and used those models to cross-check the value of this settlement, and confirmed that the settlement amount reasonably values the claims. Carey Decl. ¶ 24. Additionally, Plaintiff has also shown above that the Settlement was the product of an arms-length, non-collusive negotiation. *Supra* section VI.B.1. And given the risks and time associated with continued litigation, the possibility that the Settlement Class could recover less at trial, and the possibility of an appeal if they do prevail, $13.94 million represents a fair, reasonable, and adequate settlement.

1

2

     **5.**      **The experience and views of counsel weigh in favor of preliminary approval.**

3

     Class Counsel's judgment that this Settlement is fair and reasonable is entitled to

4

significant weight. *See Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523,

5

528 (C.D. Cal. 2004) ("'Great weight' is accorded to the recommendation of counsel,

6

who are most closely acquainted with the facts of the underlying litigation.") (citation

7

omitted). This is particularly true here where Class Counsel are not only experienced

8

class attorneys, but have significant experience—decades—with insurance cases and

9

insurance class actions. *See Reid v. I.C. Sys. Inc*., No. CV-12-02661-PHX-ROS, 2018

10

WL 11352039, at *3 (D. Ariz. July 27, 2018) (giving counsel's recommendations a

11

"presumption of reasonableness," where class counsel had sufficient expertise in class

12

actions and consumer protection cases), *aff'd*, 795 F. App'x 509 (9th Cir. 2019); *see also*

13

Hagens Berman Firm Resume, Ex. D (showing class and insurance experience). Here,

14

Proposed Class Counsel's experience and recommendation supports a finding that the

15

settlement is fair, reasonable, and adequate.

16

**C.**    **The Proposed Class Notice and Plan for Dissemination Comply with Rule 23(e)**

17

18

     Rule 23(e)(1) requires that a court approving a class action settlement must "direct

19

notice in a reasonable manner to all class members who would be bound by the

20

proposal." Fed. R. Civ. P. 23(e)(1)(B). In addition, for a Rule 23(b)(3) class, the court

21

must "direct to class members the best notice that is practicable under the circumstances,

22

including individual notice to all members who can be identified through reasonable

23

effort." Fed. R. Civ. P. 23(c)(2)(B). A class action settlement notice "is satisfactory if it

24

'generally describes the terms of the settlement in sufficient detail to alert those with

25

adverse viewpoints to investigate and to come forward and be heard.'" *Churchill Vill.,*

26

*LLC v. Gen. Elec.,* 361 F.3d 566, 575 (9th Cir. 2004) (citations omitted); *see also* Fed. R.

27

Civ. P. 23(c)(2)(B) (describing specific information to be included in the notice).

28

The proposed plan for disseminating notice provides direct notice to the Settlement Class as required by Rule 23(e)(1)(B). Using the Class Members' contact information from Defendants, notice be sent via USPS first class mail. Settlement Agreement ¶¶ 9, 11, Ex. A. Notice will additionally be sent by email to Class Members with valid email addresses. *Id.* ¶ 9. Given the size and variation among the Class Member's recoveries, Class Counsel also requests approval from the Court to contact the Settlement Class Members directly. Once preliminary approval is granted and Class Counsel is appointed, an "attorney-client relationship exist[s] for the purpose of aiding prospective class members in deciding whether or not to join in the class action." *Kleiner*, 102 F.R.D. at 769. Class Counsel fulfills their responsibility "by providing neutral, objective information and advice" about whether to join or exclude themselves from the class action. *Id.* at 769 n.20. Because this is a relatively small Settlement Class and most of the recoveries are large, Class Counsel may contact Settlement Class Members to answer any questions about the settlement, to provide neutral information about whether to stay in the Settlement Class, and to provide Settlement Class Members with any requested documents (such as the Complaint, Motion for Preliminary Approval, or Motion for Attorneys' fees). In contacting the Settlement Class Members, Class Counsel have consulted with ethics counsel about their ethical duties and to ensure compliance with all ethical rules, including Rule 4.2 of the Arizona Rules of Professional Conduct, Communications with Person Represented by Counsel, as some of the Settlement Class Members were previously represented by counsel in relation to their individual claims.

The proposed Notice contains all the information required by Rule 23(c)(2)(B) to the Settlement Class, in language that is plain and easy to understand. Long Form Notice, Ex. C. The proposed Notice features a prominent headline and is identified as a Notice from the District Court. *Id.* The Notice includes information about the lawsuit and Settlement, including Plaintiff's claims, the definition of the Settlement Class, the amount of the Settlement, how much each Settlement Class Member will receive from the Settlement, the right to object, the right to request exclusion, contact information for

Class Counsel, how to attend the final fairness hearing, and the settlement website where Class Members can obtain additional case information. *Id.* ¶¶ 1, 3–4, 7–11, 15–20, 22, 25. The Notice alerts recipients that the Notice is an important document authorized by a court and that the content may affect them, thereby supplying reasons to read the Notice, and visit the settlement website or contact Class Counsel for additional information. *Id.* at p. 1.

To assist potential Class members in understanding the information concerning the lawsuit and their rights, Epiq will use a dedicated and case-specific website. *Id.* ¶ 25. Class Members will be able to obtain detailed information about the case and review key documents, including the Complaint, the motion for fees and costs, important court documents, and the Settlement Agreement. *Id.* ¶¶ 1, 3–4, 10–12, 20, 25. The case website will also include information on how Class Members can request to have their claim value reevaluated and how to request exclusion from the Settlement Class. *Id.* ¶ 11. The settlement website address will be displayed prominently on the Notice. *Id.* ¶¶ 1, 3–4, 10–12, 20, 25.

Finally, Proposed Class Counsel proposes that the deadline for Settlement Class Members to request exclusion from the Settlement Class or object to the Settlement be set forty-five (45) days after the sending of Notice ("Notice Date"). Settlement Agreement ¶ 15, Ex. A.

These notice provisions meet the requirements of Rule 23. They will allow the Settlement Class a full and fair opportunity to review and respond to the proposed settlement.

**D.      Proposed Schedule for Dissemination of Notice and Final Approval**

Plaintiff proposes the following schedule for the dissemination of class notice and final approval:

MOTION FOR PRELIMINARY APPROVAL

| Event | Proposed Deadline |
|---|---|
| Settlement Class Data provided to Epiq | No later than 30 days after entry of preliminary approval order |
| Notice Date | No later than 60 days after entry of preliminary approval order |
| Last day for motion for attorneys' fees, costs, expenses, and service awards | No later than 15 days after the Notice Date |
| Last day for objections to settlement | Filed or received 45 days after the Notice Date |
| Last day for requests for exclusion from the Settlement Class | Filed or received 45 days after the Notice Date |
| Last day to file motion in support of final approval of settlement | 14 days before the Fairness Hearing |
| Fairness Hearing | [Date to be set by the Court] |

## V.    CONCLUSION

For these reasons, Plaintiff respectfully requests that, for settlement purposes only, the Court preliminarily approve the Settlement with Hartford, certify the Settlement Class, appoint Plaintiff Miller as Settlement Class Representative, appoint Robert Carey of Hagens Berman as Class Counsel, and direct notice in the form and manner, and on the schedule, proposed here.

MOTION FOR PRELIMINARY APPROVAL

| | |
|---|---|
| 1 | Dated: July 1, 2024 |

Respectfully submitted by,

HAGENS BERMAN SOBOL SHAPIRO LLP

By: *s/ Robert B. Carey*
    Robert B. Carey
    John M. DeStefano
    Michella Kras
    11 West Jefferson Street, Suite 1000
    Phoenix, Arizona 85003
    Telephone: (602) 840-5900
    Facsimile: (602) 840-3012
    Email:  rob@hbsslaw.com
           johnd@hbsslaw.com
           michellak@hbsslaw.com

THE SLAVICEK LAW FIRM
    Brett L. Slavicek
    James Fucetola
    Justin Henry
    5500 North 24th Street
    Phoenix, Arizona 85016
    Telephone: (602) 285-4420
    Facsimile: (602) 287-9184
    Email: brett@slaviceklaw.com
          james@slaviceklaw.com
          justin@slaviceklaw.com

*Attorneys for Plaintiff*

MOTION FOR PRELIMINARY APPROVAL