**WO**

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Charles Miller, | No. CV-22-01545-PHX-JJT |
| Plaintiff, | **ORDER** |
| v. | |
| Trumbull Insurance Company, | |
| Defendant. | |

At issue is Plaintiff's Motion for Preliminary Approval of Class Action Settlement and Certification of the Settlement Class (Doc. 51, "Mot."). After reviewing the Motion, the attached documents, and the relevant case law, the Court will grant the Motion.

## I.    BACKGROUND

In 2021, this Court ruled that Arizona law requires stacking of uninsured motorist ("UM") or underinsured motorist ("UIM") coverages within a multi-vehicle policy under A.R.S. § 20-259.01(H), where the insurer did not provide the insured an opportunity to elect which vehicle's coverage was applicable to the claim. *Heaton v. Metro. Grp. Prop. & Cas. Ins. Co.*, No. CV-21-00442-PHX-SRB, 2021 WL 6805629, at *8 (D. Ariz. October 19, 2021). In the wake of that ruling, several plaintiffs filed similar cases, alleging the same theory of liability.

The first such case before the Court was *Franklin v. CSAA General Insurance Co.*, No. CV-22-00540-PHX-JJT. While *Franklin* was pending, Plaintiff filed this case in state court, alleging that he was injured in an automotive collision that resulted in over $170,000

in damages, and the non-party at fault was uninsured. Plaintiff was insured under a policy with Defendant Trumbull Insurance Company that insured four vehicles at $50,000 per person and an aggregate limit of $10,000 per collision. Plaintiff alleged that Trumbull would not allow him to stack the four vehicles' coverages despite not complying with A.R.S. § 20-259.01(H). He also sought to certify two classes of similarly situated individuals. Trumbull removed the case to federal court.

Meanwhile, in *Franklin*, the Court certified two questions to the Arizona Supreme Court: "(1) Does A.R.S. § 20-259.01 mandate that a single policy insuring multiple vehicles provides different underinsured motorist (UIM) coverages for each vehicle, or a single UIM coverage that applies to multiple vehicles?" and "(2) Does A.R.S. § 20-259.01(B) bar an insured from receiving UIM coverage from the policy in an amount greater than the bodily injury liability limits of the policy?" *Franklin*, 2022 WL 16631090, at *2–3. The Arizona Supreme Court answered:

> (1) § 20-259.01's text, history, and purpose provide that an insured covered by a multi-vehicle policy has necessarily "purchased" multiple UIM coverages for each vehicle under subsection (H); thus, rather than employing singular definitions of "coverage" in their policies, insurers must comply with the statute's requirements in order to prevent insureds from intra-policy stacking; and (2) § 20-259.01(B) does not limit UIM coverage.

*Franklin v. CSAA Gen. Ins. Co.*, 532 P.3d 1145, 1153 (Ariz. 2023).

After the Arizona Supreme Court's answers to the certified questions, Plaintiff and Trumbull engaged in pre-certification settlement negotiations, including a mediation. The parties agreed to negotiate and settle all claims related to UM/UIM coverage for policies sold in Arizona by Trumbull, Hartford Insurance Company of the Southeast, Twin City Fire Insurance Company, Hartford Underwriters Insurance Company, Hartford Insurance Company of the Midwest, and Hartford Casualty Insurance Company (collectively, "Defendants")[1], which are all affiliated companies under common management. After two

---

[1] Plaintiff has since filed an Amended Complaint adding each of these companies as a Defendant. (Doc. 44.)

mediations and several more months of negotiations, the parties agreed on key terms and entered into a final settlement agreement, agreeing to settle the case for $13,940,000.00. (Doc. 51-1, "Agreement")

Plaintiff now moves for certification of the settlement class and preliminary approval of the settlement agreement.

## II.   LEGAL STANDARD

### A.   Class Certification

Federal Rule of Civil Procedure 23(a) provides that a class action—that is, an action in which one or more members of a class sue on behalf of all members of the class—may proceed only if four prerequisites are met:

1. Numerosity: "the class is so numerous that joinder of all members is impracticable";

2. Commonality: "there are questions of law or fact common to the class";

3. Typicality: "the claims or defenses of the representative parties are typical of the claims or defenses of the class;" and

4. Adequacy of Representation: "the representative parties will fairly and adequately protect the interests of the class."

Fed. R. Civ. P. 23(a).

In addition, under Rule 23(b), a court may only certify a class action if there is at least one of the following:

1. Risk of Inconsistency: the prosecution of separate actions by individual class members would create a risk of inconsistent adjudications or adjudications that would be dispositive of non-party class member interests; or

2. Appropriate Class-Wide Injunctive Relief: injunctive or declaratory relief is appropriate respecting the class as a whole because the conduct of the opposing party applies generally to the class; or

3. Predominance and Superiority: "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

Fed. R. Civ. P. 23(b).

"Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Thus, "'sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question.'" *Id.* (quoting *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 160 (1982)). Class certification "is proper only if 'the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied,'" which will frequently "entail some overlap with the merits of the plaintiff's underlying claim." *Id.* at 350–51 (quoting *Falcon*, 457 U.S. at 161).

**B.    Preliminary Approval**

Class actions require the approval of the district court before settlement. Fed. R. Civ. P. 23(e) ("The claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled, voluntarily dismissed, or compromised only with the court's approval."). The Ninth Circuit has declared a strong judicial policy that favors settlement of class actions. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556 (9th Cir. 2019).

Procedurally, this process moves forward in two steps. The first step is preliminary approval. During preliminary approval, the court conducts a preliminary fairness evaluation to determine if notice of the class action settlement should issue to class members and, if applicable, whether the proposed settlement class should be certified. *See*

David F. Herr, *Ann. Manual Complex Lit.* § 21.632 (4th ed. 2023). The court looks to several factors to gauge fairness and adequacy, including:

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004). However, some of the eight *Churchill* factors cannot be fully assessed until the final fairness hearing. *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 665 (E.D. Cal. 2008).

Therefore, at the preliminary approval stage, courts need only evaluate whether the proposed settlement (1) appears to be the product of serious, informed, non-collusive negotiations, (2) has no obvious deficiency, (3) does not improperly grant preferential treatment to class representatives or segments of the class, and (4) falls within the range of possible approval. *Horton v. USAA Cas. Ins. Co.*, 266 F.R.D. 360, 363 (D. Ariz. 2009).

The second step is the final approval. "If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). In doing so, the court must consider several factors, including whether "the class representatives and class counsel have adequately represented the class"; "the proposal was negotiated at arm's length"; "the proposal treats class members equitably relative to each other"; and "the relief provided for the class is adequate." *Id.* When considering whether "the relief provided for the class is adequate," the court should also consider:

> (i) the costs, risks, and delay of trial and appeal;
> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

1
2

    (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
    (iv) any agreement required to be identified under Rule 23(e)(3).

3

4
5

*Id.* After the final fairness hearing, the Court will fully analyze the *Churchill* factors and the above considerations of Rule 23(e) in making its final decision on the settlement.

6
7
8
9
10
11
12

    But at this juncture, the Court will review the parties' proposed settlement agreement according to the four preliminary approval considerations and conduct a cursory review of its terms in deciding whether to order the parties to send the proposal to the class members and conduct a final fairness hearing. *See Alberto*, 252 F.R.D. at 665. Because "[s]ettlement is the offspring of compromise; the question . . . is not whether the final product could be [better], but whether it is fair, adequate and free from collusion." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998).

13

## III.    ANALYSIS

14

### A.    Class Certification

15

    Under the terms of the settlement agreement, the proposed settlement class is:

16
17
18
19
20
21
22
23

    All persons insured under one of Defendants' personal lines automobile policies issued in Arizona that provided uninsured ("UM") or underinsured ("UIM") motorist coverage for more than one motor vehicle, and who received a claim payment equal to the limit of liability for the UM or UIM benefits for only one person/one vehicle (or whose payment was based on the limit of liability for UM or UIM coverage for only one vehicle where the full per accident single vehicle limit was paid to multiple individuals) and who were not notified of their right to select which vehicle's coverage was applicable during the Class Period, as reflected in the agreed-upon list transmitted by Defendants' counsel to Plaintiff's counsel on May 29, 2024.[2]

24
25

(Agreement ¶ 3.) The Court will consider whether this class meets the requirements of Rule 23(a) and (b).

26

---

27
28

[2] The agreement further defines the "Class Period" as follows: "For individuals insured by Trumbull, their dates of loss occurred between August 11, 2016 through the date the Parties sign [the] Settlement Agreement, and for those who were insured by the remaining Defendants, their dates of loss occurred between October 10, 2017 through the date the Parties sign [the] Settlement Agreement."

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### 1.      Rule 23(a)(1)—Numerosity

Known as the numerosity requirement, Rule 23(a)(1) provides that a class action may be maintained only if "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "In determining whether numerosity is satisfied, the Court may consider reasonable inferences drawn from the facts before it." *In re Yahoo Mail Litig.*, 308 F.R.D. 577, 589–90 (N.D. Cal. 2015). Impracticality has been interpreted to mean that joinder of all the claims would be difficult and inconvenient. *See In re Modafinil Antitrust Litig.*, 837 F.3d 238, 249 (3d Cir. 2016) (citing *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993)). Although there is no precise number required to meet this prerequisite, a proposed class of 40 or more members tends to indicate that joinder is impracticable. *Rannis v. Recchia*, 380 F. App'x 646, 651 (9th Cir. 2010) ("In general, courts find the numerosity requirement satisfied when a class includes at least 40 members."); *Huynh v. Harasz*, 2015 WL 7015567, at *5 (N.D. Cal. 2015) ("As other district courts have noted, 'the numerosity requirement is usually satisfied where the class comprises 40 or more members.'") (quoting *Twegbe v. Pharmaca Integrative Pharmacy, Inc.*, No. CV 12-5080 CRB, 2013 WL 3802807, at *3 (N.D. Cal. 2013)). In the present case, Plaintiff proposes the above-defined putative class, which consists of over 350 members. (Mot. at 16.) Joining over 350 plaintiffs would be impracticable. Accordingly, numerosity is satisfied.

### 2.      Rule 23(a)(2)—Commonality

Under Rule 23(a)(2), a class action must present "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Courts have interpreted this section to require a minimum of only one common question of law or fact shared by the class. *Dukes*, 564 U.S. at 359 ("[F]or purposes of Rule 23(a)(2), even a single common question will do." (alteration and quotation marks omitted)); *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 589 (9th Cir. 2012) ("[C]ommonality only requires a single significant question of law or fact."). Satisfying Rule 23(a)(2) is a "'relatively light burden' that 'does not require that all the questions of law and fact raised by the dispute be common . . . or that the common

questions of law or fact predominate over individual issues.'" *Esparza v. SmartPay Leasing, Inc.*, No. C 17-03421 WHA, 2019 WL 2372447, at *2 (N.D. Cal. 2019) (quoting *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1268 (11th Cir. 2009)).

Plaintiff asserts here that all members of the proposed class purchased a Hartford policy in Arizona that included multi-vehicle UM or UIM coverage and the same or substantially the same limitation of liability language. Plaintiff also alleges that each member requested UM or UIM coverage from Hartford but only received the policy limit for one covered vehicle, even though Hartford did not provide the required notice under A.R.S. § 20-259.01(H). Moreover, Plaintiff's breach of contract and breach of the duty of good faith and fair dealing claims are identical to those of the rest of the proposed class. *See McClure v. State Farm Life Ins. Co.*, 341 F.R.D. 242, 250 (D. Ariz 2022) ("Plaintiff has satisfied the commonality requirement because each claim is based on a form contract and a uniform course of conduct towards each policyholder."). And finally, because all the policies at issue are Arizona policies, Arizona law controls and applies to each member. Plaintiff satisfies the commonality requirement.

### 3.    Rule 23(a)(3)—Typicality

Rule 23(a)(3) requires that the "claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Typicality examines whether other class members have the same or similar injury, whether the action is based on conduct that is not unique to the named plaintiffs, and whether other class members have been injured by the same conduct. *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010); *Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014). The named plaintiff's claims and the rest of the class claims need not be identical to satisfy the typicality requirement. *Parsons*, 754 F.3d at 685. Also, if the claims arise from a similar course of conduct and share the same legal theory, certain factual differences or differing damages may not necessarily defeat typicality. *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1116–18 (9th Cir. 2017).

As mentioned, Plaintiff's claims and the class claims are identical, as they all sound in contract and arise out of virtually identical injuries. Plaintiff's claims are therefore typical of the class's claims, and the typicality requirement is met.

### 4.      Rule 23(a)(4)—Adequacy

Rule 23(a)(4) requires that the "representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 625 (1997). "[A] class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members." *E. Tex. Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977) (quoting *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 216 (1974)). To determine if the named plaintiffs adequately represent the class, courts ask: "(1) Do the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Evon v. L. Offs. of Sidney Mickell*, 688 F.3d 1015, 1031 (9th Cir. 2012).

There appears to be no conflict of interest between Plaintiff and the proposed class here, especially in light of the commonality and typicality requirements being met. *See Zwicky v. Diamond Resorts Mgmt. Inc.*, 343 F.R.D. 101, 116 (D. Ariz. 2022) (finding no conflict when commonality and typicality were met, and plaintiffs suffered the same alleged injury as the rest of the proposed class). The Court also finds that Plaintiff's counsel has no conflict with the proposed class members, as counsel has previously litigated related cases and achieved favorable results. For the same reason, the Court finds that Plaintiff's counsel is likely to "prosecute the action vigorously on behalf of the class." Plaintiff has shown adequacy.

### 5.      Rule 23(b)

With the requirements of Rule 23(a) satisfied, the Court now turns to Rule 23(b). Plaintiff seeks class certification pursuant to Rule 23(b)(3), (Mot. at 19), which provides

for class treatment (1) when questions of law or fact common to class members predominate over questions affecting individual members—the predominance requirement, and (2) when a class action is superior to other available methods for the fair and efficient adjudication of the controversy—the superiority requirement. Fed. R. Civ. P. 23(b)(3).

### i.     Predominance

The predominance requirement is more demanding than Rule 23(a)(2)'s commonality requirement. *See Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013). The predominance inquiry "focuses on the relationship between the common and individual issues and tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 944 (9th Cir. 2009) (internal quotations omitted). "[C]ourts have a duty to take a close look at whether common questions predominate over individual ones to ensure that individual questions do not overwhelm questions common to the class." *Senne v. Kan. City Royals Baseball Corp.*, 934 F.3d 918, 927 (9th Cir. 2019) (internal quotations omitted). "In contrast to Rule 23(a)(2), Rule 23(b)(3) focuses on the relationship between the common and individual issues. When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998) (internal citations omitted).

Here, the common issues predominate over the individual issues. As mentioned, liability will be established by policy forms, standardized letters, and the uniform practices of the insurers. And although the members will have individualized damages, that "does not defeat finding predominance." *Just Film*, 847 F.3d at 1121. Damages here will be calculated on a class-wide basis using a set formula, which is sufficient to satisfy this element. *See McClure*, 341 F.R.D. at 254 (finding predominance where the damages model was "applied on a class-wide basis to calculate damages for each individual policyholder in the class").

ii.     **Superiority**

To satisfy the requirements of Rule 23(b)(3), Plaintiff must also show that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "Where classwide litigation of common issues will reduce litigation costs and promote greater efficiency, a class action may be superior to other methods of litigation." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996).

Here, a class action will promote efficiency. Because each member's claims involve substantially similar contracts and conduct, filing hundreds of individual cases would simply increase litigation costs and waste the parties' and the Court's time and resources. Additionally, although damages vary among the members, many of their claims will be too small to make individual litigation possible. *See McClure*, 341 F.R.D. at 254 ("[B]ecause the recoveries of each individual class member will be relatively small, a class action is superior to other methods of adjudication.") Thus, the superiority requirement has been met.

**6.     Conclusion**

The Court finds that Plaintiff's proposed settlement class meets the requirements of Rule 23(a) and (b), and therefore the Court will certify the class for settlement purposes.

**B.     Preliminary Approval of the Settlement**

Plaintiff also seeks preliminary approval of the class action settlement. Rule 23(e) states that the claims of a certified class may only be settled with the Court's approval. The first step in the approval process is a preliminary review in which the court determines if it "will likely be able to" approve the settlement proposal under the "fair, reasonable, and adequate" standard of Rule 23(e)(2) such that it can direct notice under Rule 23(e)(1) to all class members of the settlement proposal and set a hearing on the fairness of the settlement "[i]f the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible

approval." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (quoting *Schwartz v. Dallas Cowboys Football Club, Ltd.*, 157 F. Supp. 2d 561, 570 n.12 (E.D. Pa. 2001)).

Having considered in detail Plaintiff's Motion for Preliminary Approval of Class Action Settlement (Mot. at 22–30), including the Settlement Agreement (Doc. 51-1) and the Notice of Class Action Settlement (Doc. 51-3), and good cause appearing,

**IT IS HEREBY ORDERED** granting Plaintiff's Motion for Preliminary Approval of Class Action Settlement and Certification of the Settlement Class (Doc. 51).

**IT IS FURTHER ORDERED** as follows:

1.      The Court certifies the following Class for the purposes of settlement only ("the Settlement Class"): All persons insured under one of Defendants' personal lines automobile policies issued in Arizona that provided uninsured ("UM") or underinsured ("UIM") motorist coverage for more than one motor vehicle, and who received a claim payment equal to the limit of liability for the UM or UIM benefits for only one person/one vehicle (or whose payment was based on the limit of liability for UM or UIM coverage for only one vehicle where the full per accident single vehicle limit was paid to multiple individuals) and who were not notified of their right to select which vehicle's coverage was applicable during the Class Period, as reflected in the agreed-upon list transmitted by Defendants' counsel to Plaintiff's counsel on May 29, 2024, which list officially identifies the members of the Settlement Class generally described herein.[3]

2.      The Court designates Plaintiff Charles Miller as Class Representative for the Settlement Class.

3.      The Court appoints Hagens Berman Sobol Shapiro LLP as Class Counsel for the Settlement Class.

4.      This Order incorporates by reference the definitions in the Settlement

---

[3] The "Class Period" shall be defined as follows: For individuals insured by Trumbull, their dates of loss occurred between August 11, 2016 through the date the Parties sign the Settlement Agreement, and for those who were insured by the remaining Defendants, their dates of loss occurred between October 10, 2017 through the date the Parties sign the Settlement Agreement.

Agreement as though fully set forth herein, and all capitalized terms used herein shall have the same meaning as set forth in the Settlement Agreement.

5.     The Court preliminarily approves the Settlement and finds on a preliminary basis that: (a) the Settlement is fair, adequate and reasonable; (b) the Settlement Fund and Common Fund are fair, adequate and reasonable when balanced against the risk, expense, complexity, and likely duration of further litigation; (c) sufficient discovery, investigation, and research have been conducted such that counsel for the parties at this time are able to reasonably evaluate their respective positions; (d) settlement at this time will avoid additional costs by all parties, as well as avoid the delay and risks that would be presented by the further prosecution of the action; and (e) the Settlement has been reached as the result of non-collusive, arm's length negotiations.

6.     The Court approves the proposed Notice (Doc. 51-3). The Court further finds that the content of the Notice and proposed plan of notice, which includes direct mailed notice to the Class Members as well as email notice, where email addresses are available, meet the requirements of Rule 23 and due process, and are the best notice practicable under the circumstances and shall constitute due and sufficient notice to all persons entitled thereto.

6.     The Court appoints Epiq Class Action & Claims Solutions, Inc. as the Settlement Administrator.

7.     The Court will hold a Fairness Hearing on **December, 13, 2024, at 9:30 a.m. (Arizona time)** before District Judge John J. Tuchi in Courtroom 505, Sandra Day O'Connor Federal Courthouse, 401 West Washington Street, Phoenix, Arizona 85003, to determine whether to approve certification of the class for settlement purposes; whether the proposed terms and conditions in the Settlement Agreement are fair, reasonable, and adequate; whether a final judgment should be entered; whether the proposed plan of distribution should be approved; the amount of fees and expenses that should be awarded to Class Counsel; and the amount of the service award that should be provided to the Class Representative.

8.      Within 30 days of the date of this Order, Defendants shall pay from the Settlement Amount an amount sufficient to cover costs of administration (as determined by the Settlement Administrator) into an account established by the Settlement Administrator for the Settlement Fund, to cover any costs of administration before final approval of the Settlement. The Settlement Administrator is authorized to expend such funds to pay notice and administration costs necessary to effectuate the approval process as well as any incidental taxes or tax expenses as set forth in the Settlement Agreement. The Court appoints the Settlement Administrator to supervise and administer the notice procedure, and if final approval of the Settlement is granted, to distribute the Settlement Fund, pursuant to the terms of the Settlement Agreement.

9.      Within 60 days of the date of this Order (the "Notice Date"), the Settlement Administrator shall mail the Notice by first class U.S. mail to all Class Members for whom there is a valid mailing address, or whose mailing addresses can be identified with reasonable effort, and shall email the Notice to all Class Members for whom an email address is available in Defendants' records.

10.     All Class Members who do not request exclusion from the Settlement ("Settlement Class Members") shall be bound by all determinations and judgments in the litigation concerning the Settlement, whether favorable or unfavorable to the Settlement Class.

11.     Class Counsel shall file its motion for attorneys' fees, costs, and service award for Class Representative, and all supporting documentation and papers, at least 30 days before the deadline for exclusions and objections.

12.     Any person who desires to request exclusion from the Settlement Class shall submit a request for exclusion. To be excluded from the Settlement, the exclusion request must be received no later than 45 days after the Notice Date. Any request for exclusion must include:

                a) Full name, address, and email of the Class Member;

                b) The unique ID on the Settlement Class Member's Notice (if available);

c) The name of this case: *Charles Miller v. Trumbull Insurance Company, et al.*, No. 22-cv-01545-JJT;

d) A clear statement indicating that the Class Member wishes to be excluded from the Class; and

e) The Class Member's signature and date.

All persons who submit valid and timely requests for exclusion shall have no rights under the Settlement Agreement, shall not share in the distribution of the settlement funds, and shall not be bound by the final judgment relating to the Defendants entered in the litigation.

13.    Any member of the Settlement Class who has not requested to be excluded may enter an appearance in the litigation, at his or her own expense, individually or through counsel of his or her own choice. If the member does not enter an appearance, he or she will be represented by Class Counsel.

14.    Any member of the Settlement Class who has not requested to be excluded may, if desired, object, and show cause, if he or she has any reason, why the proposed Settlement should or should not be approved as fair, reasonable, and adequate; why a judgment should or should not be entered thereon; why the plan of distribution should or should not be approved; why attorneys' fees and expenses should or should not be awarded to Class Counsel; or why the service award should or should not be awarded to Class Representatives. Any objection must include the following:

a) Full name, address, and email of the Class Member;

b) The unique ID on the Settlement Class Member's Notice (if available);

c) The name of this case: *Charles Miller v. Trumbull Insurance Company, et al.*, No. 22-cv-01545-JJT;

d) A statement of the objection(s), as well as the specific reasons for each objection, including any legal authority the individual wishes to bring to the Court's attention; and

e) If the Class Member is represented by counsel, the name, address, and phone number of the Class Member's counsel.

If the Settlement Class Member plans to attend the Fairness Hearing, he or she must provide a Notice of Intent to Appear. In addition to the above elements required for any objection, the Notice of Intent to Appear must include:

      a) A list of any witnesses her or she may call to testify at the hearing;

      b) Copies of any documents he or she may use as evidence in support of his or her objection;

      c) A list of any prior class action cases in which he or she has filed an objection.

All objections must be submitted to the Court either by mailing them to the Clerk of the Court, United States District Court for the District of Arizona, with a copy mailed to Class Counsel and Defendants' Counsel at the addresses listed below, or by filing them at any location of the United States District Court for the District of Arizona. All objections must be either filed or received (not post-marked) on or before 45 days after the Notice Date.

**Court:**
Clerk of the Court
United States District Court for the District of Arizona
401 W. Washington Street
Phoenix, AZ 85003

**Class Counsel:**
Robert B. Carey
HAGENS BERMAN SOBOL SHAPIRO LLP
11 W. Jefferson Street, Suite 1000
Phoenix, AZ 85003

**Defendants' Counsel:**
Kim E. Rinehart
Wiggin and Dana LLP
265 Church Street
PO Box 1832
New Haven, CT 06510-1832

15.     Plaintiff's motion for final approval, which shall include all papers in support of the Settlement and responses by Class Counsel regarding any objections or requests for exclusions, shall be filed and served at least 14 days before the final Fairness Hearing.

16.     Upon a showing of good cause, the Court may extend any of the deadlines set forth in this Order without further notice to the Settlement Class.

17.     Except for proceedings in furtherance of the Settlement Agreement, this case is stayed pending further order of the Court.

18.     Upon the entry of this Preliminary Approval Order, the Class Representative and all members of the Settlement Class shall be provisionally enjoined and barred from asserting any claims against Defendants and the Released Parties arising out of, relating to, or in connection with the Released Claims before the Court's decision as to whether to grant final approval of the Settlement.

19.     This Settlement, and any negotiations, statements, documents, actions taken to effectuate the Settlement, or proceedings in connection with the Settlement, shall not be construed or deemed to be an admission of the truth or falsity of any claims or defenses heretofore made, or an acknowledgment or admission by any party of any fault, liability, or wrongdoing of any kind whatsoever. Neither the Settlement, nor any act performed or document executed pursuant to or in furtherance of the Settlement: (a) is or may be deemed to be, or may be used as, an admission of, or evidence of, the validity of any claim made by the Plaintiff or Settlement Class members, or of any wrongdoing or liability of the Released Parties; or (b) is or may be deemed to be, or may be used as, an admission of, or evidence of, any fault or omission of any of the Released Parties, in this case or in any proceeding in any court, administrative agency, or other tribunal.

20.     If final approval of the Settlement is not obtained, or if final judgment as contemplated herein is not entered and the Agreement's Effective Date is not reached, this Preliminary Approval Order shall be vacated *ab initio* and the parties shall be restored without prejudice to their respective litigation positions before the date of this Order. Neither this Order, the Agreement, or any pleading or other paper related in any way to the Agreement, nor any act or communication in the course of negotiating, implementing, or seeking approval of the Agreement, shall be deemed an admission by Defendants that class or subclass certification is appropriate in this case outside of the Settlement context or in any other action or shall otherwise preclude Defendants from opposing or asserting any argument they may have with respect to certification of any class(es) or subclass(es) in any proceeding (including in this case should the Settlement not become final) or shall be used as precedent in any way in any subsequent action against Defendants.

21.     For the benefit of the Class Members, and to protect this Court's jurisdiction, this Court retains continuing jurisdiction over the Settlement proceedings to ensure the effectuation thereof in accordance with the Settlement preliminarily approved herein and the related Orders of the Court.

22.     Class Counsel and Defendants' Counsel are hereby authorized to use all reasonable procedures in connection with approval and administration of the Settlement that are not materially inconsistent with this Order or the Agreement, including making, without the Court's further approval, minor form or content changes to the Notice that they jointly agree are reasonable or necessary.

23.     The Court hereby sets the following schedule of events:

| Event | Deadline |
| --- | --- |
| Deadline to provide Settlement Class Data to Settlement Administrator | 30 days after entry of this Order |
| Deadline to mail Notice ("Notice Date") | 60 days after entry of this Order |
| Deadline for filing Motion for Attorneys' Fees and Costs | 15 days after Notice Date |
| Deadline for Class Members to object to the Settlement | 45 days after Notice Date |

- 18 -

| Deadline for Class Members to opt out of the Settlement | 45 days after Notice Date |
|---|---|
| Deadline for filing Motion in Support of Final Approval of Settlement | 14 days before Fairness Hearing |
| Fairness Hearing | **December 13, 2024**, at 9:30 a.m. (Arizona time) |

Dated this 12th day of August, 2024.

Honorable John J. Tuchi
United States District Judge

- 19 -